[S. F. No. 2477.   Department Two.—March 14, 1903.]

## PACIFIC STEAM WHALING COMPANY, Respondent, v. ALASKA PACKERS' ASSOCIATION, Appellant.

OCEAN FISHERIES—PUBLIC RIGHT—PRESCRIPTION.—The right of fishery in the waters of the ocean, whether in the open sea or where the waters ebb and flow over tide-lands, is a public right, which may be exercised by any citizen, and is not, and cannot be, exclusive, or the subject of title by prescription, no matter by whom or for what length of time it may have been exercised.

ID.—FORCIBLE EXCLUSION OF PLAINTIFF.—Sufficient reason appears for plaintiff to desist from an attempt to exercise the common right of fishery with the defendant in fishing-grounds used and occupied by the defendant, where the declarations of the defendant's agent were such as would satisfy a reasonable man that further attempts to fish therein would be met and frustrated by force.

ID.—DAMAGES FOR EXCLUSION—LOSS OF PROFITS.—The plaintiff is entitled to introduce evidence upon the question of actual damages for its exclusion from such fishing-grounds, tending to show how many fish plaintiff could with reasonable probability have taken from the fishing-grounds in question, if plaintiff had not been excluded therefrom by the unlawful acts of the defendant, and to show the value of such fish and the profits which would reasonably have accrued to the plaintiff from the fish when canned. The profits thus sought to be proved were not so remote, uncertain, prospective, or conjectural as to be beyond the range of legitimate damages.

ID.—PUNITIVE DAMAGES—INTENTION OF DEFENDANT—IMPROPER EXCLUSION OF EVIDENCE.—Upon the question of punitive damages, it was improper to exclude evidence offered by the defendant for the purpose of showing the intent and motive with which defendant did the acts complained of, and that they were not done maliciously, but with a *bona fide* belief in its asserted title to the fisheries in question, and in a *bona fide* attempt to protect what was believed to be its property. Such intention and motive could be properly shown by the officers and governing body of the defendant

corporation, which was not precluded from giving such evidence because it had denied in its answer that it had committed the alleged acts.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Chickering, Thomas & Gregory, for Appellant.

Exclusive rights of fishery on tide-lands are the subject of grant. (*Lowe* v. *Govett*, 3 Barn. & Ald. 863; *Rex* v. *Montague*, 4 Barn. & C. 598; *Gough* v. *Bell*, 22 N. J. L. 441; *Lay* v. *King*, 5 Day, 76; *Lowndes* v. *Huntington*, 153 U. S. 1; *Wilson* v. *Hill*, 46 N. J. Eq. 367; Gould on Public Waters, sec. 189.) Prescriptive rights of fishery may be obtained. (*Blundell* v. *Catesall*, 5 Barn. & Ald. 91; *Gould* v. *James*, 6 Cow. 369; *Brookhaven* v. *Strong*, 60 N. Y. 56; *Rogers* v. *Jones*, 1 Wend. 237.[1]) The controversy here arises between private parties and not as against the government. (*Page* v. *Fowler*, 28 Cal. 611; *Hayes* v. *Martin*, 45 Cal. 559; *McManus* v. *O'Sullivan*, 48 Cal. 7; *Allen* v. *McKay*, 120 Cal. 332; *Corporation of Hastings* v. *Jones*, 19 L. R. Eq. 558; *Wilson* v. *Codyl*, 27 N. B. 320.) The possession of tide-lands in Alaska is protected by law. (*Carroll* v. *Price*, 81 Fed. Rep. 137; *Lewis* v. *Johnson*, 76 Fed. Rep. 476; *Young* v. *Goldstein*, 97 Fed. Rep. 303; *Sutter* v. *Heckman*, recently decided by the court of Alaska.) The exclusive right to draw fish with seines on their own land belongs to the lawful possessors. (Angell on Tide Waters, p. 41; *Lay* v. *King*, 5 Day, 76; *Bickel* v. *Polk*, 5 Harr. (Del.) 326.) The court erred in excluding evidence of motive on the question of punitive damages. (*Lamb* v. *Harbaugh*, 105 Cal. 680; *Lyon* v. *Hancock*, 35 Cal. 372.) Prospective profits should not have been allowed as damages. (*Brown* v. *Smith*, 12 Cush. 366; *Dennis* v. *Maxfield*, 10 Allen, 138; *Abeer* v. *Bratton*, 60 Mich. 357; *Post* v. *Munn*, 4 N. J. L. 61;[2] *Selden* v. *Cashman*, 20 Cal. 67;[3] *Shafer* v. *Wilson*, 44 Md. 268; *Griffin* v. *Colver*, 16 N. Y. 489;[4] *Burk* v. *Arcata etc.*

[1] 19 Am. Dec. 493.
[2] 7 Am. Dec. 570.
[3] 81 Am. Dec. 93.
[4] 69 Am. Dec. 718, and note.

R. R. Co., 125 Cal. 364;[1] Crow v. San Joaquin etc. Irrigation Co., 130 Cal. 309; San Jose Fruit Packing Co. v. Cutting, 133 Cal. 237.)

Page, McCutchen, Harding & Knight, for Respondent.

Congress has never exercised power over tide-lands, in any territory, nor granted an exclusive right of public fishery to individuals. (Hardin v. Jordan, 140 U. S. 371; Shively v. Bowlby, 152 U. S. 1; Morris v. United States, 174 U. S. 196; Mann v. Tacoma Land Co., 153 U. S. 273, 285.) Where a party who is actually in the wrong, although believing otherwise, under advice, acts in an oppressive or cruel manner, his belief in his right to do so will not protect him. (Raynor v. Nims, 37 Mich. 34;[2] Hayner v. Cowden, 27 Ohio St. 292;[3] Denver etc. Ry. Co. v. Harris, 122 U. S. 597.) The profits of which the plaintiff was deprived by the wrongful acts of the defendant were properly allowed as damages. (Sedgwick on Damages, 8th ed., p. 255, sec. 176; Lambert v. Haskell, 80 Cal. 611; Hawthorne v. Siegel, 88 Cal. 159;[4] Allison v. Chandler, 11 Mich. 542.)

Harrison & Countryman, Amici Curiæ, for modification of opinion.

McFARLAND, J.—Each of the parties to this action is a corporation, and at the time of the occurrences out of which the litigation here involved arose both of the parties were engaged in catching salmon along the shore of Alaska, at and near the mouth of Karluk River, in and near and about Tanglefoot Bay, Karluk Beach, and Tanglefoot Beach, and each had plants in the vicinity at which the fish were canned. The action is for damages for alleged wrongful acts, by which defendant, during the fishing season of 1897, unlawfully and forcibly excluded plaintiff from fishing in the ocean in the localities above mentioned. The jury returned a verdict for plaintiff in the sum of $14,000, for which amount judgment was rendered. Defendant appeals from the judgment and from an order denying its motion for a new trial.

The questions involved are, as stated in appellant's brief,

[1] 73 Am. St. Rep. 52.          [3] 22 Am. Rep. 303.
[2] 26 Am. Rep. 493.             [4] 22 Am. St. Rep. 291.

"wholly those of law, consisting of alleged erroneous rulings on the admission or rejection of evidence, and the giving and refusing to give certain instructions." Under our views of the case, there are only three subjects which call for especial notice: 1. Defendant's claim by prescription to an exclusive right of fishing in the waters of the ocean in question; 2. The matter of actual damages; and, 3. The matter of punitive damages.

Defendant contended that it and its predecessors had for a number of years—more than five years—prior to 1897, continuously and exclusively fished in the waters described in the pleadings, and thereby had acquired by prescription, the right to the sole use of those waters for the purpose of fishing, as against any one except the government. This contention is presented, by some offered and rejected evidence, to the point that it had exclusively thus used the waters under a claim of right, and by instructions given and rejected on that subject. There were several such instructions, but the question was fairly and clearly presented and disposed of by the giving of instructions numbered 1, 2, 4, and 5 asked by plaintiff, and by the refusal to give instruction numbered 51 asked by defendant. The said given instructions are as follows: "1. I instruct you that the right to fish in the waters of the sea and of the navigable arms of the sea, where the tide ebbs and flows, adjacent to the shores of Alaska and of the islands belonging thereto, including Kodiak Island, is a right public and common to every person; and I instruct you that this right extends to all such waters irrespective of the question of the ownership of the adjoining shore. 2. If you find that the waters adjoining Karluk and Tanglefoot beaches on Kodiak Islands are waters of the sea, or of a navigable arm of the sea, where the tide ebbs and flows, then I instruct you that the plaintiff had the right, common to all persons, to fish in those waters, and the defendant had no right of fishing therein superior to that of plaintiff. 4. I instruct you that the United States government has reserved the tide-lands for the common purposes of navigation, commerce, and fishery; and no one can acquire, by possession, occupation, or use, any exclusive rights in these lands superior to the public and general right, common to all, of commerce, navigation, and fishery. By the words 'tide-lands,' I mean that portion of the shore, or beach, covered

and uncovered by the ebb and flow of an ordinary tide. 5. I instruct you that the mere use of tide-lands for fishing purposes by a single person, no matter how long the use may have continued as an exclusive use, is only the exercise of a public right, and can confer no exclusive right by any prin- ciple of prescription or otherwise; but the lands still remain open to the public, as before.'' And the said instruction asked by defendant and refused is as follows: ''51. If you believe that for more than five years prior to the year 1897, and dur- ing said year, the Alaska Packers' Association, and its grantors, had been in the open, exclusive, and notorious pos- session of the fishing-grounds adjacent to Karluk Spit and Tanglefoot Beach, and if you believe that the said Packers' Association, and its grantors, for more than said period of time, constantly used and occupied the said fishing-grounds with their seines, and that such holding and use was adverse to the plaintiff and to the world, then I charge you that the Alaska Packers' Association acquired what is known as a 'prescriptive right' of fishery in and to said fishing-grounds, which said right, for the purpose of so fishing, was valid against all persons other than the United States, and, so far as the Whaling Company is concerned, the Packers' Associa- tion were entitled to the exclusive use of said fishing-grounds for the purpose of conducting its fishing operations.''

The giving of the instructions 1, 2, 4, and 5 was clearly right, and the instruction asked, numbered 51, was properly refused. The right of fishery in the waters of the ocean, whether in the open sea or where the waters ebb and flow over tide-lands, is a public right which may be exercised by any citizen. (*Shively* v. *Bowlby*, 152 U. S. 1, and cases there cited; *Hardin* v. *Jordan*, 140 U. S. 371; *Mann* v. *Tacoma Land Co.*, 153 U. S. 273.) In its very nature the exercise of the right of fishing in the public waters of the ocean is not, and cannot be, exclusive; its exercise, no matter by whom or for what length of time, is only the exercise of a public right. There can be no possession for the purpose of fishery of an area of land covered by the waters of the ocean that is at all analogous to an actual possession of a tract of upland which might give the possessor a right of action against a mere trespasser; one who exercises this public right of fishery in the sea does not by that act make himself a trespasser. We need

not inquire to what extent the government—either federal or state—could give an exclusive private right of fishery in such public waters; no such right is asserted here. Therefore, upon the subject of defendant's asserted prescriptive right we are of the opinion that the court below did not commit any error.

2. Upon the subject of actual damages there was no error in admitting evidence or instructing the jury. Plaintiff claimed that it had been forcibly excluded by defendant from salmon-fishing in the said waters during the fishing season of 1897. The court had instructed the jury on that point as follows: "I instruct you that sufficient reason would exist for plaintiff to desist from further attempt to fish if the acts and declarations of defendant's agent were such as would satisfy a reasonable man that further attempts to fish would be useless, because they would be met and frustrated by force"; and there was evidence to warrant the jury in finding the fact referred to in the instruction. The general nature of the evidence as to actual damages to which defendant objected and which plaintiff was allowed to introduce was this: Evidence tending to show how many fish plaintiff could, with reasonable probability, have taken from the fishing-grounds in question if it had not been excluded therefrom by the unlawful acts of defendant,—the value of such fish, and the profits which would reasonably have accrued to the plaintiff from the fish when canned. Plaintiff was also, in this connection, allowed to introduce evidence tending to show how many fish defendant actually did take in these fisheries during the said season. The court also instructed the jury as follows: "I instruct you that if you find that defendant or its employees or servants were, under the law as given you, guilty of acts constituting an unlawful interference with plaintiff's pursuit of a lawful business in a lawful way, then you must assess as damages the amount which will compensate plaintiff for all the detriment proximately caused thereby. I instruct you that if you find that plaintiff suffered damage by reason of the alleged wrongful acts of the defendant, or of its servants and employees, then in assessing the amount of damages caused to plaintiff by the alleged wrongful acts, you may consider the loss, if any, to plaintiff of probable profits in its business." The position of defendant is, that the evidence

pointed to damages too much in the nature of mere speculative profits to be admissible at all.

We do not think that in these rulings of the court as to evidence, or in giving the said instructions, there was any error. The profits sought to be proved were not so remote, uncertain, prospective, or conjectural as to be entirely beyond the range of legitimate damages. Of course, evidence of such damages should be closely scrutinized by a jury, and claims merely fanciful and beyond reasonably proximate certainty should be by them excluded; but the jury in this case were suitably instructed and warned on that subject, and it is to be presumed that they did their duty in the premises. With respect to this kind of damage, of course, there cannot be the absolute certainty possible in many plainer cases; but a wrong-doer cannot entirely escape the consequences of his unlawful acts merely on account of the difficulty of proving damages; he can do so only where there is no possibility of a reasonably proximate estimation of such damages, which is not the fact in the case at bar. The waters in question here constituted a special salmon fishery,—where those fishes were to be found in great abundance,—and the proposition that damages evidently suffered by plaintiff from the wrongful act of the defendant by which plaintiff was excluded from exercising the clearly valuable right of fishing in those waters are entirely beyond legal proof, cannot be maintained. We think that on this point the case at bar is within the rule announced in *Shoemaker* v. *Acker,* 116 Cal. 239, and cases there cited.

3. As to the matter of punitive damages, we think that there was error in excluding certain evidence offered by defendant for the purpose of showing the intent and motive with which defendant did the acts complained of, and that they were not done maliciously. Defendant sought to show by the testimony of its agents, and its officers who constituted its governing body, that they had a *bona fide* belief in the asserted title of defendant to the fisheries in question, and that the acts complained of were done simply for the purpose of protecting that right, and not for any malicious purpose of injuring plaintiff or its property. Such belief and motive would, of course, be no defense against the actual damage caused by their unlawful acts, but punitive damages are given as punishment beyond what a plaintiff has actually suffered;

and a jury in determining whether or not a defendant should be thus punished at all, and, if so, how much, should know with what intent and motive the unlawful act was done,— whether under an honest claim of right and in a *bona fide* attempt to protect what he believed, although erroneously, to be his property, or merely a mischievous and malicious intent to injure another by acts which he knew to be without any justification whatever.   This is a well-established principle, and has repeatedly been declared by this court.   It is fully stated in the case of *Lamb* v. *Harbaugh*, 105 Cal. 680. That was an action for damages for an alleged unlawful entry upon plaintiff's premises, and a breaking of her gates, and breaking into and injuring her dwelling-house, etc.   Defendants claimed that they entered the premises for a lawful purpose connected with the alleged commission of a crime by plaintiff's son supposed to be within the house.   There was a judgment for plaintiff, which was reversed on appeal.   The court said: "The court also erred in refusing to allow the defendant to introduce evidence for the purpose of showing their motives and purposes in going to the house of plaintiff and doing what was there done."   After stating the rule on the subject the court further said: "Within this rule the defendant should have been allowed *to state the intention* with which they visited the premises of the plaintiff. . . . If a trespass was in fact committed, the actual damage that was caused thereby would not be diminished or increased by the character of the motives which actuated the trespassers; but for the purpose of determining whether punitive damages should be allowed, the motive or intention with which the act was done became important."   (See, also, *Dorsey* v. *Manlove*, 14 Cal. 556; *Lyon* v. *Hancock*, 35 Cal. 372.)   The objection which plaintiff now makes here to the form of the questions ruled out are not well taken.   It is contended that the questions were too vague and too distantly connected with the acts committed.   Some samples of the questions are as follows: Matthews, appellant's superintendent at the fisheries, was asked: "What was your belief during that season as to the rights of the defendant, by reason of its continued user, to occupy the beaches and fishing-grounds adjacent thereto, off Karluk Spit, Tanglefoot Bay, and Improvement Beach?" Other questions of a similar character were also asked. Also:

"Did you, prior to the fishing season of 1897, know that a decision had been rendered by the district court of Alaska, in which it had been held that the title to tide-lands could be gained by possession, and that the district court of Alaska would apply to tide-lands the same rules with reference to adverse possession that it did to upland?" Also: "Did you, at the time when you had this conversation with Captain Humphrey, on the 20th of July, 1897, in good faith believe that the possession of the upland gave you an exclusive right to fish upon those beaches?" The same questions were asked of the witnesses H. F. Fortman, president of defendant, Charles Hirsch, its vice-president, and W. B. Bradford, its secretary. These questions were objected to as irrelevant and immaterial, and affording no justification of the alleged acts, and that "it makes no difference what his intent was." The objections were sustained and defendant excepted. These questions clearly tended to show the claim of right under which defendant acted, and the intent and motive actuating its conduct in the premises; and after their exclusion, upon the objections interposed, it would have been useless to prosecute the inquiry further. The point that the intent and motive of the defendant could not be shown by this proposed testimony of its officers and governing body is not tenable; if the corporation was bound by the acts of its officers and agents, who did the acts complained of, it was entitled to show the character of those acts, the circumstances under which they were done, and the motives which induced them. And defendant was not precluded from introducing this evidence because it had denied in its answer that it had committed the alleged acts. It also denied that it did the acts "maliciously or with the intention to injure, oppress, or defraud the plaintiff greatly or at all," and denied that the alleged acts were to the damage of plaintiff "in the sum of one hundred thousand (100,000) dollars, or in any sum at all." Although the jury may have been justified in finding that the alleged unlawful acts had been committed, still the amount of the damage—whether actual or punitive—was to be determined by a consideration of the evidence on that point, and each party had the right to introduce upon that question evidence that was competent and pertinent to the issue. Of course, this evidence now under consideration was material; for it cannot be

known how much of the whole amount of the verdict was for actual damages and how much for punishment. For these rulings touching the matter of punitive damages the judgment and order appealed from must be reversed.

The foregoing views cover the main features of the case, and we do not see that anything further need be said for the benefit of the court below in the event of another trial there. It, perhaps, may be well to say that the mere fact, if it be a fact, that plaintiff at one time committed a trespass on defendant's land above high-water mark, would not in itself preclude any recovery of punitive damages.

The judgment and order appealed from are reversed.

Lorigan, J., and Van Dyke, J., concurred.

Hearing in Bank denied.