[Civ. No. 15966.   First Dist., Div. One.   Aug. 18, 1954.]

A. J. FLAGG et al., Respondents, v. ANDREW WILLIAMS STORES, INC. (a Corporation) et al., Appellants.

Breed, Robinson & Stewart, Marcel E. Cerf, Robinson & Leland for Appellants.

Lewis, Field & DeGoff for Respondents.

WOOD (Fred B.), J.—Plaintiffs, operators of a restaurant, brought this action to enjoin the defendants from operating a restaurant on certain adjoining properties, to recover damages allegedly caused by the defendants' operation of such a business, and to obtain a declaration of their rights under the lease pursuant to which plaintiffs hold the premises upon which they operate their restaurant business. From a judgment in favor of the plaintiffs, the defendants have appealed.

The lease was executed July 19, 1945, by plaintiffs' predecessors as lessees and defendant Andrew Williams Stores, Inc., as lessor. The demised property is but a portion of a much larger parcel which was owned by the lessor at the time of the execution of this lease, a large shopping center situated at the southeast corner of MacArthur Boulevard and Broadway in Oakland. May 16, 1946, Andrew Williams Stores, Inc. sold this entire parcel to MacArthur Properties, Inc. and assigned to the latter its interest as lessor in and to the plaintiffs' lease.

MacArthur Properties then leased to Andrew Williams Stores, Inc. a portion of the remainder of the shopping center site, a part of which Andrew Williams later sublet to Belcher Enterprises, Inc. for the installation and operation of a soda fountain, luncheonette and drive-in restaurant business. By supplemental agreement Belcher gave Andrew Williams an option to terminate the Belcher lease and to buy Belcher's equipment at cost plus 40 per cent if the cost be under $40,000; cost plus 30 per cent if the cost be $40,000 or more, but less than $50,000; cost plus 25 per cent if the cost amount to $50,000; this option not to be exercised except for the purpose of transferring title of the Belcher restaurant business to plaintiffs in case plaintiffs should exercise their option under paragraph V of their lease to purchase and operate the restaurant business established on the Belcher premises. Andrew Williams then assigned its interest in the Belcher lease to the MacArthur Properties, Inc.

The question is whether or not the installation of facilities for a restaurant business on the premises demised to Belcher Enterprises took place under such circumstances that it can be said that the "lessor" mentioned in paragraph V of plaintiffs' lease did "install a soda fountain or other eating or drinking facilities on the said land now owned by lessor."

Paragraph V of the lease reads as follows: "Lessees covenant and agree that they will, at all times during the

term of this lease, conduct in the Demised Premises, the business of operating a cocktail bar, dining room and restaurant, and will use the Demised Premises for such purposes and necessary storage of foods and beverages in connection therewith, and office purposes in connection therewith; and will not use the Demised Premises, or any part or parts thereof, or any part of said Parking Area, or permit any other person, firm or corporation to use the same for any purpose other than those specified herein, without first obtaining the written consent of the Lessor. Lessees shall have the exclusive right to conduct said business on the land now owned by Lessor of which the herein Demised Premises are a part, provided, however, that if Lessor should, from time to time during the term of this Lease or any extension or renewal thereof, install a soda fountain or other eating or drinking facility on the said land now owned by Lessor, the Lessees shall have the right and option to operate the same for the remainder of the term of this Lease or any extension or renewal thereof, upon the same terms, covenants and conditions as herein provided, insofar as the same may be applicable. The gross receipts of said soda fountain or other eating or drinking facility, as the case may be, shall be subject to the payment of the six (6) per cent rental provided for in paragraph III hereof, but no minimum rent shall be charged. If the Lessees shall elect to operate such soda fountain or other eating or drinking facility, Lessees shall forthwith purchase from Lessor, at a price to be agreed upon, all equipment and fixtures installed by Lessor in connection therewith, and such fixtures shall thereafter be subject to the same option to purchase as is hereinafter granted by Lessees to Lessor with respect to the fixtures on the herein Demised Premises, upon any termination of this Lease. If Lessees do not elect to operate such soda fountain or other eating or drinking facility in the manner and upon the terms and conditions herein provided, or if such election is not indicated to Lessor in writing within fifteen (15) days after notice from Lessor to Lessees that the installation of said soda fountain or other eating or drinking facility has been completed, then said option shall cease and terminate as to such soda fountain or eating or drinking facility and the operation of such soda fountain or eating or drinking facility thereafter by the Lessor, its licensees, concessionaires, sub-tenants, successors or assigns, shall not be deemed to comprise a breach or violation, in any manner whatsoever, of the exclusive right to con-

duct said business hereinabove granted by Lessor to Lessees with respect to the land now owned by Lessor, of which the herein Demised Premises are a part.''

The court concluded and decreed that (1) the land which is subject to the restriction on use expressed in paragraph V of the lease is ''all of the land owned'' by Andrew Williams Stores at the date of the execution of the lease and mentioned in the lease, the entire shopping center site; (2) the word ''lessor'' as used in paragraph V means ''the owner or the successors or assigns of said owner of the real property and the whole thereof then and there owned by'' Andrew Williams Stores at the site of said shopping center at the date of execution of the lease and does not mean ''that the lessor's lessee or lessees, licensee or licensees, concessionaire or concessionaires, sub-tenant or sub-tenants, had the right to install a soda fountain or other eating or drinking facility on the said land as provided in said paragraph V''; (3) only the ''lessor'' as thus defined had the right ''to install'' a soda fountain or other eating or drinking facility ''on said land then owned by lessor,'' in which event plaintiffs would have the option to operate the same under the terms and conditions set forth in paragraph V; (4) that the privilege of ''installing'' a soda fountain or other eating or drinking facility ''by lessor, as herein defined, as contained in said paragraph V, is exercisable only by such lessor'' and requires that ''said lessor shall install for its own account''; (5) during the period within which plaintiffs' said option to purchase is exercisable ''said lessor shall not operate for its own account, or otherwise, nor permit the operation of said soda fountain or other eating or drinking facility''; (6) ''said privilege of installation is not exercisable by or through a lessee or lessees, licensee or licensees, concessionaire or concessionaires, or sub-tenant or sub-tenants of said lessor, nor the successors or assigns of a portion only or part of said parcel of real property''; (7) an option to cancel ''such lease, license, concession or sub-tenancy and an option to purchase fixtures and equipment does not constitute an installation by lessor personally under paragraph V''; (8) if said option to purchase is not exercised as provided in paragraph V, lessor may proceed to operate as provided in said paragraph; (9) the clause ''a price to be agreed upon'' as used in paragraph V means ''a reasonable price based upon the cost of the equipment and fixtures installed by the lessor in connection with any soda

fountain, or other eating or drinking facility on said premises, together with the cost of installing the same''; (10) on the date of execution of the lease from Andrew Williams Stores to Belcher Enterprises, MacArthur Properties was the ''lessor'' as herein defined and was entitled to ''install'' a soda fountain or eating or drinking facility pursuant to paragraph V; (11) the installation of such facilities which were installed pursuant to the Belcher Enterprises lease, were not installed by MacArthur Properties in accordance with paragraph V; (12) plaintiffs were not required to make an election to purchase the fixtures or equipment installed on the premises leased to Belcher Enterprises, by reason of the fact that the ''lessor'' did not ''install'' the same pursuant to paragraph V.

We deem this a correct interpretation in all respects except that we do not consider that the word ''lessor'' as used in the proviso in paragraph V of the lease is limited to the original lessor and those of its successors who own the whole of the real property owned by Andrew Williams Stores at the date of the execution of the lease and mentioned in the lease. ''Lessor'' includes the original lessor and each of its successors in ownership of the whole or any portion of said real property. The conclusions of law and the judgment should be modified to reflect the correct interpretation in this regard.

Let us first read paragraph V in the light of the situation which obtains when the lessor owns all of the property mentioned, the situation which obtained at the time of the writing and execution of the lease and still obtained during the occurrence of the events in suit.

The central feature of paragraph V is the limitation of the use of the demised premises to that of ''a cocktail bar, dining room and restaurant,'' and the covenant that the ''lessees shall have the exclusive right to conduct said business on the land now owned by lessor of which the herein demised premises are a part.'' This exclusive right is subject to an exception expressed in a proviso which immediately follows. A ''soda fountain or eating or drinking facility'' may be operated on said real property ''by the lessor, its licensees, concessionaires, sub-tenants, successors, or assigns'' if the ''lessor'' first ''installs'' such a facility and the lessees ''do not elect to operate such . . . facility.'' If they do elect, in the manner and within the time prescribed, lessees become the operators of the facility which the lessor has installed, with the status or relationship of lessees at the new location ''upon the same

terms, covenants and conditions'' as provided in the present lease, with certain modifications expressed in paragraph V. That all seems perfectly clear, giving the words used their ordinary meanings. The lessees well might contemplate with composure a limitation upon their exclusive right if tempered by the requirement that the lessor first do the installing. The lessor, conceivably, would not go to that expense unless the particular undertaking had every prospect of being profitable. That, coupled with the lessees' option to take the facility over and operate it, and the right of the lessor personally or through others to operate it if lessees do not exercise their option, apparently appealed to the parties as a mutually satisfactory method (upon the basis of direct dealings between them, not through tenants, subtenants, licensees or concessionaires of lessor) of according the lessees this exclusive privilege without too rigidly tying the hands of the lessor.

Next, suppose that "lessor" sells a portion of the remainder of the real property of which the demised premises are a part. The new owner of that portion takes it subject to the "exclusive right" of lessees to "conduct" thereon the "business of operating a cocktail bar, dining room and restaurant." The lease expressly provides that its covenants and agreements bind the successors and assigns of the parties and contains nothing indicative of an intent to terminate or modify this exclusive right in whole or in part save upon the conditions expressed in the proviso in paragraph V. What, then, becomes of the exception expressed in that proviso? It also continues unabated attached as it is to the "exclusive right" as an inseparable modification thereof. It gives the new owner the right to install a soda fountain or other eating or drinking facility upon the portion of the property acquired by him, subject to lessees' right to acquire the facility and operate it.

This interpretation also finds support in, though not dependent upon, the testimony of the attorney who represented the original lessees in negotiating and drafting this lease, testimony narrating pertinent discussions which occurred during those negotiations.

In view of the fact that the defendants challenge the injunctive feature of the judgment solely upon the theory that the trial court misinterpreted the pertinent provisions of paragraph V of the lease, and we have found the trial court's interpretation correct in that regard, it is unnecessary to con-

sider other factors stressed by the plaintiffs as additional grounds for sustaining the judgment.

Concerning the award of damages, defendants' contention is twofold. They claim that the award of damages rests upon the same asserted misinterpretation of paragraph V of the lease as claimed by them when challenging the injunctive feature of the judgment. This claim lacks merit, as we have seen, and furnishes no greater basis for reversal of the award of damages than it does for reversal of the injunctive feature of the judgment. In addition, defendants claim that even if the trial court correctly interpreted paragraph V of the lease, the award of damages does not find sufficient support in the evidence.

As to damages, the court found: "That while it is true that plaintiff's business has increased in volume since the installation of the restaurant and soda fountain at Broadway and MacArthur Boulevard, now being operated by defendant, BELCHER ENTERPRISES, INC., . . . plaintiffs would have enjoyed an increased profit for the period May 12, 1948, to September 30, 1952, inclusive, if said restaurant had not been opened for business and operated by said defendants and have suffered damages during said period in the sum of $25,725.00 BY REASON OF THE OPERATION OF SAID RESTAURANT BY SAID DEFENDANTS."

The evidence of monetary damages to the plaintiffs included proof of the volume of sales, operating costs, customer counts and other significant data at each of the two restaurants. That evidence showed that Belcher's gross receipts during the period May 12, 1948, to October 1, 1951, averaged somewhat in excess of $9,800 per month. Plaintiff A. Flagg testified that approximately one-half of Belcher's trade would have gone to plaintiffs' restaurant if Belcher had not been in operation. Theodore Rothman qualified as an expert experienced in making and valuing restaurant leases and in ascertaining the effect of one restaurant business upon that of another by reason of a competitive location. He was also experienced as a business consultant to owners and operators of all types of food services including restaurants. He inspected both of the restaurants here involved and analyzed and compared conditions and operations at each. Based upon these observations and his analysis of the financial statements covering each restaurant, he concluded that if Belcher were not there at least half the business done by Belcher would go to plaintiffs, the loss of which he computed at $2,350 a month. He found

that 50 per cent of Belcher's sales amounted to $4,900 a month. In his opinion 48 per cent of the $4,900 ($2,352) would have been profit to the plaintiffs. The trial court assessed the damages at $25,725, slightly less than $500 per month from the commencement of the Belcher operations (May 12, 1949) to September 30, 1952.

The defendants offered no evidence concerning the amount of damages. They question the sufficiency of plaintiffs' evidence upon the following grounds, as stated by them: (1) plaintiffs' business increased during the period of competition; (2) the damages should have been, but were not, assessed upon the basis of the profits made at the Belcher restaurant; (3) Rothman's estimate that one-half of the Belcher business would have gone to plaintiffs was completely speculative; (4) Rothman's assumption that there would have been no competitive restaurant if Belcher's had not been in operation was fallacious because of the right of the lessor under paragraph V of the lease to install restaurants; (5) Rothman made no determination of the average size of checks at the Belcher restaurant, and (6) Rothman made no vacant table count at plaintiffs' restaurant to determine whether plaintiffs had the capacity to accept additional business.

The increase in business does not necessarily token no injury to plaintiffs from Belcher's operations; instead, it is a reasonable inference that business at the shopping center was on the increase and that Belcher's operations reduced plaintiffs' share of it, an inference which the trial court drew and a reviewing court may not disturb. There would be no logic in predicating plaintiffs' damages upon Belcher's net profits. There is evidence tending to prove that plaintiffs could take care of the volume of business of which Belcher deprived them, could do so without increase of equipment or personnel. Rothman's estimate that one-half of the Belcher business would have gone to plaintiffs does not impress us as mere speculation. It was based upon the knowledge gained by his wide experience and extensive observations in the restaurant business for many years, which he applied by intensive study and analysis to the two restaurant operations here involved. Various factors which he testified entered into the calculation indicate that his analysis was sound and well-founded. At least, we see no basis for a reviewing court to disturb the inferences drawn by the trial court. There may be some element of uncertainty but not such a degree of uncertainty as to render the testimony

174

speculative. There is no uncertainty as to the fact of damage, that is, as to the nature, existence or cause of the damage. The same certainty as to the amount of the damage is not required. "One whose wrongful conduct has rendered difficult the ascertainment of the damages cannot escape liability because the damages could not be measured with exactness. (*Pacific etc. Co.* v. *Alaska Packers' Assn.*, 138 Cal. 632 [72 P. 161]; 15 Am.Jur. 412, and cases cited.)" (*Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 297-298 [149 P.2d 177]. See also *Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal.2d 158, 174 [88 P.2d 698, 89 P.2d 386]; *Speegle* v. *Board of Fire Underwriters*, 29 Cal. 2d 34, 46 [172 P.2d 867]; *Stott* v. *Johnston*, 36 Cal.2d 864, 875 [229 P.2d 348, 28 A.L.R.2d 580]; *Noble* v. *Tweedy*, 90 Cal.App.2d 738, 745 [203 P.2d 778]; 78 A.L.R. 858.)

Defendants' contention that damages must be assessed upon the assumption that the lessor would have installed one or more restaurant facilities and thus would have compelled plaintiffs to operate the same or suffer competition through operation by others, is itself based upon pure speculation. The lessor made no such installation and the evidence supports an inference that it had no intention of doing so. It is true that Rothman made no precise determination of the average size of checks at the Belcher restaurant. That information was not available. He made an assumption, however, based upon his analysis of conditions, that the average check at the Belcher restaurant was about 45 cents and we have found no evidence indicating that his assumption was erroneous. Although Rothman did not make a precise vacant table count, he did, as a mental calculation, observe the percentage of occupancy at each restaurant during lunch hours. After looking over both operations he did not deem it necessary to make a more specific count and defendants have not shown a need for a more specific count. The points urged by defendants in respect to sufficiency of the evidence of damages do not furnish a reviewing court a basis for overruling the findings of the trier of the facts.

Defendants claim that because of the bankruptcy of one of plaintiffs' predecessors as lessees (a bankruptcy which occurred more than five years after assignment to plaintiffs as lessees and more than four years after lessors' written acceptance of plaintiffs as lessees) the lessor terminated the lease as to plaintiffs and their predecessors in interest as lessees.

The facts in respect thereto are as follows: The original lessees consisted of J. A. Pland and Ralph J. Mohr, in-

dividually and as copartners, doing business under the firm name and style of Pland-Evans. On February 6, 1947, they assigned to plaintiffs A. J. Flagg and John S. Flagg all their right, title and interest in and to the lease.

Paragraph XVI of the lease originally read as follows: "Neither this Lease nor any interest therein shall be assignable or otherwise transferable by operation of law or by voluntary assignment for the benefit of creditors, it being expressly understood and agreed that said inhibition against involuntary assignment includes and comprehends any and every assignment which might otherwise be effected or accomplished by bankruptcy or receivership, or attachment or execution, or other judicial processes or proceedings. If Lessees should file a voluntary petition in bankruptcy, or if Lessees should be adjudicated bankrupt, or if a receiver is appointed of or for Lessees and such receiver is not discharged within sixty (60) days following such appointment, then and in any such event Lessor may, at its option, terminate this Lease by giving written notice of such termination to Lessees."

Under date of December 4, 1947, by written agreement between defendant MacArthur Properties, Inc., a corporation (successor of Andrew Williams Stores, Inc. as lessor), and plaintiffs A. J. Flagg and John S. Flagg paragraph XVI of the lease was "deleted in its entirety and stricken from the lease and the following paragraph . . . substituted" therefor: "Lessees shall not assign this lease, nor any right hereunder, nor sublet the premises, nor any part thereof, without the prior written consent of lessor. No consent to any assignment of this lease, or any subletting of said premises shall constitute a waiver or discharge of the provisions of this paragraph, except as to the specific instance covered thereby; nor shall this lease nor any interest therein be assignable by action of law including bankruptcy, both involuntary and voluntary, and no Trustee, Sheriff, Creditors or purchaser at any judicial sale, or any officer of any court or receiver except if appointed as herein specifically provided shall acquire any right under this lease or to the possession or use of the premises or any part thereof without the prior written consent of lessor. Any violation of the term of this paragraph shall at the option of lessor be deemed a breach of this lease."

This agreement recited the assignment of February 6,

1947, from the original lessees to plaintiffs and declared "that ever since [said assignment] said First Parties [plaintiffs] have been the assignees of the lease as aforesaid, and operating the business at demised premises." The parties to said agreement further mutually agreed as follows: "First parties [plaintiffs] hereby assume and agree to be bound by said lease and Second parties [MacArthur Properties, Inc.] in consideration thereof agree to release the James A. Pland and Ralph J. Mohr from any liability under said lease hereafter to accrue, should the latter so desire." A letter, dated December 4, 1947, to plaintiffs from MacArthur Properties, Inc., referred to the agreement of the same date and among other things stated that the writer "hereby recognizes the validity of assignment of lease by the lessees named therein to yourselves, and consents thereto."

On April 22, 1952, Pland's, a partnership (formerly known as Pland-Evans, composed of J. A. Pland and Ralph J. Mohr) was adjudicated a bankrupt and on May 8, 1952, defendant MacArthur Properties, Inc. gave written notice of its election to terminate the lease by reason of the adjudication in bankruptcy of said copartnership and sent a copy of said notice by registered U.S. mail addressed to J. A. Pland and Ralph J. Mohr individually and as copartners and to the personal representatives and successors in interest of the estate of J. A. Pland, deceased, and to plaintiffs.

The trial court concluded that none of the defendants had a right to terminate the lease by reason of said adjudication of bankruptcy and that the lease has not been terminated but continues in full force and effect. We think these conclusions of the trial court entirely correct.

When interpreting a forfeiture clause we start with the rule announced in section 1442 of the Civil Code: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." Of two or more possible constructions, "the construction which avoids a forfeiture should be favored." (*Brant* v. *Bigler*, 92 Cal.App. 2d 730, 734 [208 P.2d 47], and cases cited.) A forfeiture in a lease "is not favored. It is enforced only where there is such a breach shown as it was the clear and manifest intention of the parties to provide for." (*DeLong* v. *Black's Package Co.*, 86 Cal.App. 80, 83 [260 P. 392].) There is persuasive authority to the effect that a clause which forfeits or authorizes the lessor to forfeit the lessee's interest upon bankruptcy of the lessee should, unless its language plainly

otherwise requires, be interpreted as referring to the bankruptcy of the tenant in possession; i.e., the bankruptcy of the original lessee if there has been no assignment of his interest in the lease, or, if there has been an assignment, the bankruptcy of the assignee. (*Waukegan Times Theatre Corp.* v. *Conrad* (1945), 324 Ill.App. 622 [59 N.E.2d 308, 314-315], and *Stamm* v. *Buchanan* (1951), 55 N.M. 127 [227 P.2d 633, 636-638], and cases cited in each.)

Accordingly, when on December 2, 1947, MacArthur Properties, Inc., as lessor, approved the assignment to plaintiffs and joined with plaintiffs in deleting the text of paragraph XVI, substituting therefor a provision which for the first time forbade voluntary assignment or subletting without prior written consent of the lessor, coupled with a radical revision of the original involuntary transfer forfeiture clause, the parties to that agreement could, at most, have contemplated transfers (voluntary or involuntary) by the new lessees (plaintiffs herein) and their successors and assigns. It is not conceivable that they had in mind future transfers (voluntary or involuntary) by the original lessees.

It is no answer to argue, as defendants in effect argue, that although MacArthur Properties, Inc., in this agreement of December 7, 1947, agreed to "release" the original lessees "from any liability under said lease hereafter to accrue, should the latter so desire," there is no evidence that the original lessees ever accepted that tender by indicating their desire to be released. We are not concerned with the "liability," if any, of the original lessees for default in payment of rent or other violation by plaintiffs of the obligations the latter have assumed under the lease. We are concerned with the consequences, if any, to plaintiffs of an adjudication in bankruptcy suffered by the original lessees, or by at least one of them, long after their divestiture of all their right, title and interest in the lease and long after the revision, by the lessor and the assignees, of the forfeiture clause itself. As we have seen, there are, under the circumstances of this case, no untoward consequences to plaintiffs flowing from the bankruptcy adjudication of the original lessees or of any of them.

The conclusions of law and the judgment are hereby modified by striking the words "and the whole thereof" from paragraph (6) of the conclusions of law and from paragraph (B) of the judgment and inserting in lieu thereof the words "or any part thereof," and by striking the words "nor any

successors or assigns of a portion only or part of said parcel of real property'' from paragraph (7) of the conclusions of law and from paragraph (C) of the judgment.

As so modified the judgment is affirmed, plaintiffs to recover costs on appeal.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied September 17, 1954, and appellants' petition for a hearing by the Supreme Court was denied October 13, 1954.