[Civ. No. 22123.   Second Dist., Div. Two.   Apr. 19, 1957.]

REUBEN STRAUS, Respondent, v. NORTH HOLLYWOOD
HOSPITAL, INC. (a Corporation), Appellant.

Chase, Rotchford, Downen & Drukker and Richard A. Perkins for Appellant.

Glickfeld & Goldstein for Respondent.

FOX, J.—This is an appeal by North Hollywood Hospital, Inc. (hereinafter designated "the Hospital"), from a money judgment entered upon an arbitration award in favor of Dr. Reuben Straus, and from an order (1) confirming the arbitration award to Dr. Straus, and (2) denying the Hospital's motion to vacate that award.

The sole question presented is whether the arbitrators exceeded their powers in making a cash award to Dr. Straus.

The controversy between the parties derives from a written contract which they executed on March 11, 1954. Under this contract, which had a five-year term, it was agreed that the Hospital would furnish Dr. Straus with certain space, facilities, services and equipment for the conduct of a clinical pathology laboratory on its premises. In return, the Hospital was entitled to retain for itself a certain percentage of the gross monthly billings for the services performed by Dr. Straus. The amounts so received represented payment of rental by Dr. Straus to the Hospital for the space, facilities and services provided him. Paragraphs 7 and 11 of the contract indicate that Dr. Straus was to function as an independent contractor in the operation of the pathology laboratory and was to be responsible for manning it with suitable personnel and for payment of their salaries and all welfare and social security taxes. By paragraph 12, Dr. Straus was given ''the sole and exclusive right and privilege during the term of this agreement to do all laboratory and pathology work in and for said hospital.'' Paragraph 21 provided for arbitration of disputes and culminated in the following language: ''Arbitrators to have right to terminate contract.''

About a year and a half after the execution of the above agreement, differences between the parties became sufficiently acute for invocation of the arbitration provision. In October, 1955, they entered into an agreement for submission to arbitration pursuant to which three arbitrators were selected. The submission agreement provided in essence that the matters to be arbitrated were: (1) whether Dr. Straus had conformed to the contract; (2) whether Dr. Straus had abandoned the contract; (3) whether the Hospital is relieved of any responsibility to Dr. Straus ''under the terms of said agreement for his failure to carry out the terms thereof''; (4) ''A consideration of each and every breach of the aforesaid written contract on the part of the hospital. The relief sought by Dr. Straus under this issue is that the hospital be directed and compelled to specifically perform this contract; that Dr. Straus be awarded such damages compensatory and punitive, to which he may be entitled by law; and that Dr. Straus be awarded such other and further relief to which he may be entitled by law. . . .'' (5) An accounting of money due Dr. Straus to determine whether the Hospital paid him the correct amounts due him in accordance with the contract.

Pursuant to the submission agreement, hearings were conducted by the three arbitrators at which both parties were represented by counsel and evidence was taken. Thereafter, the arbitrators made an award which, so far as here germane, provided: "1. That the contract between Dr. Straus and the [Hospital] be terminated effective October 1, 1955; 2. That Dr. Straus be awarded the sum of $7,814.20 as compensation; . . ."

Dr. Straus petitioned the superior court for confirmation of the award of the arbitrators and entry of judgment in conformity therewith. The Hospital petitioned for the denial of the Straus petition and for an order vacating said award. As has been indicated, the appeal is from the judgment and orders entered in favor of Dr. Straus.

In its brief on appeal the Hospital asserts it has no quarrel with that portion of the award which purports to terminate the contract between the parties. It concedes further that paragraph 4 of the submission agreement "would permit a cash award under certain circumstances." It argues, however, that inasmuch as the arbitrators found that the Hospital did not wrongfully breach the contract, a monetary award was not justified and in making such award the arbitrators exceeded their powers.*

The infirmity of the Hospital's argument stems from its narrow interpretation of the submission agreement, its overemphasis on certain of the findings favorable to itself and its failure to appreciate fundamental principles governing arbitration awards.

▮ An arbitration proceeding is grounded in the mutual

---

*The award reads in part: "We, the undersigned arbitrators . . . having duly heard the proofs and allegations of the Parties find:

"1. That in certain respects Dr. Straus has substantially conformed with his written contract with the North Hollywood Hospital, Inc.; that in certain other respects there has not been complete conformance.

"2. That Dr. Straus did not abandon his contract with the North Hollywood Hospital, Inc.

"3. That the North Hollywood Hospital, Inc., has substantially complied in certain respects with the written contract, and in certain other respects there has not been complete conformance; that the North Hollywood Hospital, Inc., is relieved of all responsibility to Dr. Straus under the terms of the contract, except as more specifically set out in the Award below.

"4. That the North Hollywood Hospital, Inc., is not compelled to specifically perform under the terms of its contract with Dr. Straus; that the said Hospital shall pay compensation to Dr. Straus as set forth in the Award below. . . .

"5. That Dr. Straus is not entitled to accounting of moneys under the contract after October 1, 1955; that prior to October 1, 1955,

assent of the disputants to the resolution of their controversy by such tribunal, and the arbitrators derive their powers from the submission agreement. (*Crofoot* v. *Blair Holdings Corp.*, 119 Cal.App.2d 156, 184 [260 P.2d 156].) ■ ''Every reasonable intendment will be indulged to give effect to arbitration proceedings.'' (*Sampson Motors, Inc.* v. *Roland,* 121 Cal.App.2d 491, 494 [263 P.2d 445]; *Popcorn Equipment Co.* v. *Page,* 92 Cal.App.2d 448, 451 [207 P.2d 647].)

■ The merits of the controversy between the parties are not subject to judicial review. (*Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.,* 29 Cal.2d 228, 232-233 [174 P.2d 441].)

■ Submission agreements are to be construed like other contracts so as to give effect to the intention of the parties, the presumption being that all matters in dispute were intended to be decided. (*Dugan* v. *Phillips,* 77 Cal.App. 268, 278 [246 P.2d 566]; *Popcorn Equipment Co.* v. *Page, supra.*)

■ The basic contract having provided that the arbitrators should have the power to terminate the agreement, that provision was automatically imported into the submission agreement, along with such questions as whether Dr. Straus might compel specific performance or recover compensatory damages to which he might be entitled at law. The arbitrators found that Dr. Straus had substantially conformed with his contract with the Hospital. ■ That contract was a property right, for it was not only the demise of a leasehold (*Beckett* v. *City of Paris Dry Goods Co.,* 14 Cal.2d 633, 638 [96 P.2d 122]) but also granted Dr. Straus the sole and exclusive privilege of doing all laboratory and pathology work in and for the Hospital for the term of the agreement, which still had over three years to run before the expiration date. Inasmuch as the contract involved personal services and continuous acts by both sides, the arbitrators determined, despite the fact that Dr. Straus had rendered substantial performance, that the agreement was not specifically enforceable under the circumstances. Presumably because of

Dr. Straus received an accounting of moneys under the contract as provided therein. .

''6. . . . that under the contract executed between the Parties hereto, the Parties have given to the Arbitrators, specifically in the event of difference or dispute of any nature whatsoever, the right to terminate the contract.

''We, the Arbitrators, therefore, make the following AWARD:

''1. That the contract between Dr. Straus and the North Hollywood Hospital, Inc., be terminated effective October 1, 1955;

''2. That Dr. Straus be awarded the sum of $7,814.20 as compensation; . . .''

the nature of the strife and dissension between the parties, which would make a harmonious continuation of the agreement unlikely, the arbitrators elected to terminate the contract and to compensate Dr. Straus for loss of his contractual rights and the leasehold which was thereby surrendered to the Hospital.

Contrary to the Hospital's assertion, such an award was within the scope of the submission agreement and is agreeable with prevailing principles of law. ■ The parties having conferred upon the arbitrators the power to terminate the contract, it may reasonably be supposed the parties contemplated that such power would be exercised justly and with due regard for the equities of the situation. ■ Stipulations which are necessary to make a contract reasonable are implied in respect to matters as to which the contract manifests no contrary intention. (*Brandenstein* v. *Jackling,* 99 Cal.App. 438, 445 [278 P. 880].) ■ A fair and reasonable interpretation of a contractual provision, rather than one leading to harsh, unreasonable or inequitable results, is always preferred. (*Disney* v. *Disney,* 121 Cal.App.2d 602, 615 [263 P.2d 865]; *Bergin* v. *van der Steen,* 107 Cal.App.2d 8, 14 [236 P.2d 613].) ■ Of two possible constructions of a contract, the one which avoids forfeiture of property rights must be made if it is at all reasonable. (*Ballard* v. *MacCallum,* 15 Cal.2d 439, 444 [101 P.2d 692]; *Milovich* v. *City of Los Angeles,* 42 Cal.App.2d 364, 374 [108 P.2d 960].)

■ As indicated, Dr. Straus had substantially performed under his contract, which gave him a leasehold interest and the exclusive right to operate a pathology department. In support of the arbitration award, it may be inferred that Dr. Straus had devoted time and effort to develop this branch of the hospital service, and that his exclusive right to conduct this operation was a valuable one. Clearly, the effect of the termination of the agreement was to cancel such right and to annul the leasehold. The termination also effected a reversion of the leasehold and the exclusive privilege of operating the pathology laboratory to the Hospital, though there was no serious default on the part of Dr. Straus. To have worked such a result without just compensation to Dr. Straus would have been to sanction a forfeiture, as well as to suffer the Hospital to be unjustly enriched at his expense. These are consequences which the law seeks assiduously to prevent. It is hornbook law that compensation and not forfeiture is a favorite maxim of both law and equity. ■ A forfeiture

of a lease is not favored. (*Flagg* v. *Andrew Williams Stores, Inc.*, 127 Cal.App.2d 165, 176 [273 P.2d 294]; *DeLong* v. *Black's Package Co.*, 86 Cal.App. 80, 83 [260 P. 392].)

Under the circumstances, the arbitrators could reasonably conclude also that to permit the Hospital to reacquire the premises and appropriate the benefit of Dr. Straus' labor in development of the pathology laboratory as well as his exclusive privilege to operate it would constitute unjust enrichment. (See *Randol* v. *Scott,* 110 Cal. 590, 597 [42 P. 976]; *Manning* v. *Franklin,* 81 Cal. 205, 208 [22 P. 550].) Since Dr. Straus could not have specific performance and he had asked for compensatory damages, the arbitrators could properly award him, upon termination of the contract, such sum as they might conclude he was entitled to in order to avoid a forfeiture and obviate unjust enrichment of the Hospital. In so doing, they acted in harmony with well established rules of law and in conformity with a reasonable interpretation of their powers under the submission agreement.

The judgment and orders are affirmed.

Moore, P. J., and Ashburn, J., concurred.