In re HQ GLOBAL HOLDINGS, INC., et al., Debtors.

Nos. 02–10760(MFW) to 02–10794(MFW).

United States Bankruptcy Court, D. Delaware.

June 1, 2004.

Karen C. Bifferato, Connolly, Bove, Lodge, Hutz, LLP, Wilmington, DE, Thomas V. Loran, Ana N. Damonte, Pillsbury Winthrop LLP, San Francisco, CA, for Fifty California Street Associates and 425 Market Street Associates.

Daniel J. DeFranceschi, Etta Wolfe, Richards, Layton & Finger, P.A., Wilmington, DE, Robert W. Hamilton, Charles Oellermann, Mary E. Tait, Jones Day, Columbus, OH, for Reorganized Debtors.

## OPINION [1]

MARY F. WALRATH, Chief Judge.

Before the Court is the Twenty–Third Omnibus Objection of HQ Global Holdings, Inc. ("the Debtor") seeking an Order disallowing, inter alia, the proofs of claim asserted by Fifty California Street Associates and 425 Market Street Associates

---

1. This opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

(collectively "the Landlords").[2] For the following reasons we overrule, in part, the Debtor's Objection.

## I. FACTUAL BACKGROUND

On October 5, 1995, the Debtor entered into a non-residential real property lease with Fifty California, and on May 27, 1999, the Debtor entered into a non-residential real property lease with 425 Market (collectively "the Leases"). On March 13, 2002, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 30, 2002, the Debtor and the Landlords amended the Leases ("the 2002 Amendments") whereby the Landlords agreed to reduce the rents, retroactive to August 1, 2002, if the Debtor assumed the Leases. The 2002 Amendments provided that if the Leases were assumed after January 31, 2003, "an amount equal to one third (1/3) of the Rent Credit shall be applied to [the Debtor's] payments of Monthly Rent for each of the first three (3) months following the Bankruptcy Assumption Date."

On September 5, 2003, the Debtor and the Landlords amended the Leases for a second time ("the 2003 Amendments"). Section 2, in particular, was amended to provide that if the Leases were assumed after January 31, 2003, "an amount equal to one third (1/3) of the Rent Credit shall be applied to satisfy the obligations set forth below in the following order: (i) first, to the cure amounts, as defined [in the 2003 Amendments]; and, (ii) second, if available, to the [Debtor's] payments of Monthly Rent for each of the first three (3) months following the Bankruptcy Assumption Date." On September 15, 2003, the Court approved the Debtor's assumption and assignment of the Leases as amended.

Subsequently, on October 31, 2003, the Debtor filed the Twenty–Third Omnibus Objection seeking, inter alia, an Order disallowing the proofs of claim filed by the Landlords for unpaid rent. On December 2, 2003, the Landlords responded to the Debtor's Objection. Hearings were held on April 19 and May 3, 2004. The matter is now ripe for decision.

## II. JURISDICTION

This Court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 1334 & 157(b)(1), (b)(2)(A), (B), & (O).

## III. DISCUSSION

The Debtor seeks an Order disallowing the Landlords' claims because it contends that the Leases were assumed and that the cure amounts were paid in full by the rent credit. The Landlords contend, however, that the Debtor failed to pay the full cure amounts. Specifically, the Landlords contend that the 2003 Amendments limited the amount of rent credit the Debtor may apply against the cure amounts to one-third because the Debtor assumed the Leases after January 31, 2003. The Debtor disagrees and contends that the 2002 Amendments gave the Debtors the full benefit of the rent credit and that the 2003 Amendments did not alter the intent of the parties behind the 2002 Amendments.

### A. Express Terms

#### 1. Controlling Amendments

The Debtor contends that the 2002 Amendments provide that it could apply the entire accrued rent credit over three months post-assumption. There is nothing in the 2002 Amendments which reduces or

---

**2.** The proofs of claim seek outstanding cure amounts, rejection damages, and additional damages provided for in the Leases.

waives the rent credit if the Leases are assumed after January 31.

The Landlords contend, however, that the 2002 Amendments do not control the analysis because the 2003 Amendments provide that "[the 2003 Amendments] together with the Lease[s] set forth the entire agreement and understanding of the parties hereto concerning the subject matter hereof." (2003 Amendments at § 5.) Further, the 2003 Amendments specifically provide that they amend the language contained in the 2002 Amendments regarding the application of the rent credit. (*Id.* at § 2(b).) Therefore, the Landlords contend that the Debtor inappropriately relies on the 2002 Amendments when the 2003 Amendments control.

We agree with the Landlords that the 2003 Amendments govern our analysis. They expressly modified the Leases and the 2002 Amendments with respect to the application of the rent credit. The final agreement of the parties, as approved by the Order authorizing the assumption of the Leases, incorporates the 2003 Amendments, not the 2002 Amendments.

### 2. *2003 Amendments*

The Landlords contend that the 2003 Amendments provide that the Debtor would receive only one-third of the rent credit if it assumed the Leases after January 31, 2003. The Debtor contends that this interpretation is contrary to California law,[3] which provides that a contract forfeiture provision must be strictly enforced against the benefitting party. *See* Cal. Civil Code § 1442 (Deering 2004). If there are multiple possible contract interpretations, the one which avoids forfeiture must be made if it is reasonable. *See Straus v. N. Hollywood Hosp. Inc.*, 150 Cal.App.2d 306, 309 P.2d 541, 545 (1957).

We conclude, however, that the 2003 Amendments do *not* impose a forfeiture on the Debtor. The 2002 Amendments did not give the Debtor any entitlement to a rent credit *until* the Debtor assumed the Leases. That is, assumption of the Leases was a condition precedent to the rent credit. The Debtor did not assume the Leases while the 2002 Amendments were in effect. Instead, they agreed to different terms (that the Debtor would only receive one-third of the rent credit if the Debtor assumed the Leases after January 31). As a result, the Debtor had no contractual right to the rent credit at the time the Leases were amended by the 2003 Amendments, and no forfeiture occurred by those amendments.

Even if we were to find that there was a forfeiture, we would still find that the 2003 Amendments should be enforced as written. California law does not prohibit a forfeiture, it merely provides that forfeiture provisions must be strictly interpreted against the benefitting party. Avoidance of a forfeiture provision is permissible only where the provision is susceptible to multiple interpretations and the one which avoids the forfeiture is reasonable. *See Straus*, 309 P.2d at 545. The 2003 Amendments are not susceptible to multiple interpretations, they provide that the Debtor could only apply one-third of the rent credit if the Leases were assumed after January 31st. In fact, the Debtor reached this same conclusion. In an email sent November 12, 2003, by the Debtor's Lease Administrator, she acknowledged that the 2003 Amendments provided that the Debtor would only get one-third of the rent credit and lose the remaining two-thirds. (Lessor's Exhibit 9). Accordingly, we conclude that the 2003 Amendments

---

**3.** Paragraph 37 of the Leases provides, and the parties do not contest, that the Leases and all amendments are governed by California law.

provide that the Debtor is only entitled to one-third of the rent credit, since it did not assume the Leases before January 31, 2003.

### B. *Parol Evidence and Subjective Intent*

The Debtor also contends that the Landlords' rent credit interpretation is improper because the Debtor never intended to waive two-thirds of the rent credit. The Debtor contends that California law provides that a contract must be interpreted to give effect to the mutual intention of the parties. *See* Cal. Civil Code § 1636 (Deering 2004). The Debtor also contends that California law provides that in cases of uncertainty, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. *See* Cal. Civil Code § 1654 (Deering 2004).

However, "[i]f the contractual language is clear and explicit, it governs." *In re Bennett*, 298 F.3d 1059, 1064 (9th Cir.2002) (quoting *Bank of West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, 552 (1992)). The relevant intent is the objective intent as evidenced by the words of the instrument, not a party's subjective intent. *Shaw v. Regents of Univ. Of Cal.*, 58 Cal.App.4th 44, 67 Cal.Rptr.2d 850 (1997). The express language of the 2003 Amendments is clear and unambiguous: the Debtor is entitled to apply only one-third of the rent credit. Therefore, we conclude that the subjective intent of the Debtor is not relevant in this case.

### IV. *CONCLUSION*

For the reasons set forth above, we overrule, in part, the Debtor's Objection to the claims of the Landlords.

An appropriate Order is attached.

## ORDER

AND NOW, this 1st day of June, 2004, upon consideration of the Twenty–Third Omnibus Objection of HQ Global Holdings, Inc. seeking an Order disallowing, inter alia, the proofs of claim asserted by Fifty California Street Associates and 425 Market Street Associates, for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the Twenty–Third Omnibus Objection is **OVERRULED,** and it is further

**ORDERED** that Fifty California Street Associates has an allowed administrative priority claim in the amount of $32,007.41 for outstanding cure amounts owed under its Lease, and an allowed administrative priority claim in the amount of $51,542.46 for the amounts owing under its Lease for September 16, 2003, through and including March 31, 2004, and it is further

**ORDERED** that 425 Market has an allowed administrative priority claim in the amount of $3,560.43 for the outstanding cure amounts owed under its Lease, and an allowed administrative claim in the amount of $139,476.64 for the amounts owing under its Lease for September 16, 2003, through and including March 31, 2004; and it is further

**ORDERED** that the Debtor is authorized and directed to pay immediately to Fifty California Street Associates and 425 Market the outstanding cure amounts owed as well as the amounts owed thereunder for the period of September 16, 3003, through and including March 31, 2004, and it is further

**ORDERED** that to the extent the Fifty California Street Associates or 425 Market Proof of Claim exceeds the amounts to be paid as set forth in this Order, the Proof of Claim is disallowed, and it is further

**ORDERED** that the Debtor remains liable for all of its obligations under the Fifty California Street Associates and 425 Market Leases, including, but not limited to, all amounts owing to the Landlords for rent accrued on and after April 1, 2004.