[No. D020227. Fourth Dist., Div. One. Nov. 3, 1995.]

CQL ORIGINAL PRODUCTS, INC., Plaintiff and Appellant, v. NATIONAL HOCKEY LEAGUE PLAYERS' ASSOCIATION, Defendant and Respondent.

1348

**COUNSEL**

Edward Vincent King, Jr., Susan E. Stark and Dirk Van Ausdall for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Walter R. Allan, Bruce A. Ericson, Douglas R. Tribble, Grippo & Elden, John R. McCambridge, Charles S. Bergen and Christopher B. Wilson for Defendant and Respondent.

OPINION

**WORK, Acting P. J.**—CQL Original Products, Inc. (OP) appeals an order granting National Hockey League Players' Association's (NHLPA) motion to dismiss OP's first amended complaint pursuant to Code of Civil Procedure[1] section 410.30 enforcing the forum selection clause contained in the parties' license agreement. OP contends enforcing the combined choice-of-forum/choice-of-law clause and transferring the case to Ontario, Canada enables NHLPA to escape California's law and fundamental policy disfavoring forfeiture. OP further asserts transferring the case to Ontario would contravene California's policy to construe all contracts to avoid forfeitures and, in any event, the forum selection clause is unenforceable because it is ambiguous as to whether OP is required to file its claims in Ontario. As we shall explain, we conclude OP's assertions are meritless and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

NHLPA[2] and OP, a California corporation which produces and markets vinyl products depicting the likenesses of popular television stars, music entertainers and professional athletes, after negotiations, entered into a "License Agreement" (agreement) permitting OP to manufacture, distribute and sell reusable plastic decals bearing the likenesses of certain NHLPA players and the NHLPA logo and trademark.[3] The agreement required OP to perform certain conditions before marketing or selling any licensed decal. OP was required to submit all advertising and marketing materials to NHLPA for approval before using such materials, including all packaging and promotional materials, drafts and prototypes (pars. 7(c), (d)). Because NHLPA extended only group licenses for its members, rather than a license to use the likeness of any individual player, the agreement (par. 2(c)) required OP to use a minimum of eight players with equal prominence in promotional materials and to rotate the NHLPA members used to avoid highlighting any particular player. Finally, the agreement (par. 2(b)) also required OP to obtain direct personal approval and make separate payment to

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]NHLPA is an unincorporated, nonprofit association created under the laws of the Province of Ontario, Canada. Established in 1967, it represents the interests of professional hockey players in the National Hockey League in various areas including group licensing and the licensing of the NHLPA logo and trademark.

[3]Marc Sobil and David Siegel, president and vice-president of OP respectively, represented OP's interest during the negotiations. Both men are experienced businessmen and entrepreneurs. Sobil graduated magna cum laude in economics from Harvard University and received a law degree and a masters in business administration from Stanford University, both with honors. Siegel also obtained his MBA from Stanford University.

any player whose individual image it sought to use. Paragraph 17(a)(i) of the agreement expressly provided OP's license could be immediately terminated by NHLPA if it failed to obtain NHLPA's written approval before marketing its product. Finally, paragraph 23 of the agreement requires the parties pursue litigation upon NHLPA's election in Ontario, Canada, providing: "This Agreement shall be governed by the law of Ontario, Canada and any claims arising hereunder shall, at the Licensor's election, be prosecuted in the appropriate court of Ontario. The Licensee hereby attorns to the jurisdiction and judgment of the courts of the Province of Ontario, Canada, and agrees that a judgment of an Ontario court shall be enforceable in the jurisdiction in which the Licensee is located."

Soon after the agreement took effect on June 1, NHLPA learned OP may have breached several license provisions by launching an unapproved advertising campaign featuring full-page ads of star players in magazines directed at card collectors. One allegedly unapproved full-page advertisement featured only Wayne Gretzky, star center of the Los Angeles Kings, while another unapproved full-page advertisement featured only Mario Lemieux, star center of the Pittsburgh Penguins. Allegedly neither Gretzky nor Lemieux had approved the use of their images in advertisements, nor had the NHLPA approved the advertisements as required under the agreement. NHLPA alleges OP breached paragraph 2(b) requiring it to negotiate and obtain individual player approval for personal endorsements, paragraph 2(c) requiring a minimum of eight players be used with equal prominence on all promotional and packaging materials, paragraph 7(c) requiring prior written approval by NHLPA for any promotional and packaging material and paragraph 7(d) requiring submission and prior approval of concepts, layouts, art work prototypes and production samples for all promotional and packaging materials. On viewing the advertisements and confirming OP had failed to obtain prior approval, NHLPA personally notified OP and again by letter dated July 8, it had breached the agreement and that NHLPA had elected to terminate the agreement pursuant to paragraph 17(a)(i). NHLPA formally notified OP of this termination by letter dated July 14.

On July 29, OP sued in the United States District Court for the Northern District of California, claiming NHLPA and Upper Deck, a trading card manufacturer, had conspired to terminate OP in violation of federal and state antitrust laws. When NHLPA moved to dismiss OP's federal complaint, OP dismissed the action without notice to NHLPA and refiled its complaint in superior court. OP's state court complaint alleges antitrust violations and various tort claims arising from an alleged conspiracy between NHLPA and Upper Deck to terminate OP's license to manufacture plastic decals in order to eliminate competition in the collectible hockey trading card market.

After an unsuccessful motion to dismiss pursuant to section 410.30 by NHLPA, OP amended its complaint by adding a claim for breach of contract. OP then dropped its allegations of antitrust violations and dismissed Upper Deck, leaving only a breach of contract action against NHLPA. NHLPA then moved to dismiss the amended complaint on the ground of forum non conveniens, asserting OP's claims of breach of contract were subject to the forum selection clause requiring all actions be brought in Ontario, Canada. By order entered November 18, the trial court found OP had not met its burden of proving the choice of forum provision was unreasonable. Specifically, the court found OP did not establish NHLPA employed a superior bargaining power to impose the contract on it, nor that OP did not freely and voluntarily enter into the contract. The court declared: "There is no evidence that plaintiff did not possess the power to walk away from the negotiations if displeased with the contract provisions." The court further found that given NHLPA is based in Ontario, Canada, the forum choice was reasonable. The court stated: "While there appears to be a conflict between the applicable law of Ontario and California, this does not amount to a conflict with a 'fundamental policy' of California. There is no public policy reason to deny enforcement of a forum selection clause freely entered into. There is no applicable statutory scheme prohibiting the parties from choosing a non-California forum." The court dismissed OP's complaint with permission to refile only in the event the Ontario forum should become unavailable to hear OP's claims.

## GOVERNING LAW

Although California has a policy favoring access to its courts by its resident plaintiffs, our Supreme Court has concluded that policy is satisfied where a plaintiff freely and voluntarily negotiates away his or her right to a California forum. (*Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 495 [131 Cal.Rptr. 374, 551 P.2d 1206].) In accord with the modern trend favoring enforceability of forum selection clauses (see *The Bremen* v. *Zapata Off-Shore Co.* (1972) 407 U.S. 1, 10-12 [32 L.Ed.2d 513, 520-522, 92 S.Ct. 1907]; Rest.2d Conf. of Laws, § 80), the Supreme Court held: "No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length. For the foregoing reasons, we conclude that forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith, Valentino & Smith, Inc.* v. *Superior Court, supra*, 17 Cal.3d at pp. 495-496; *Nedlloyd Lines B.V.* v. *Superior Court* (1992) 3 Cal.4th 459,

464 [11 Cal.Rptr.2d 330, 834 P.2d 1148].) Given the significance attached to forum selection clauses, the courts have placed a substantial burden on a plaintiff seeking to defeat such a clause, requiring it to demonstrate enforcement of the clause would be unreasonable under the circumstances of the case. (*Lu* v. *Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1493 [14 Cal.Rptr.2d 906].) That is, that the forum selected would be unavailable or unable to accomplish substantial justice. (*Cal-State Business Products & Services, Inc.* v. *Ricoh* (1993) 12 Cal.App.4th 1666, 1679 [16 Cal.Rptr.2d 417].) Moreover, in determining reasonability, the choice of forum requirement must have some rational basis in light of the facts underlying the transaction. (*Id.* at p. 1679; *Furda* v. *Superior Court* (1984) 161 Cal.App.3d 418, 426 [207 Cal.Rptr. 646].) However, "neither inconvenience nor additional expense in litigating in the selected forum is part of the test of unreasonability." (*Cal-State Business Products & Services, Inc.* v. *Ricoh*, *supra*, 12 Cal.App.4th at p. 1679; *Smith, Valentino & Smith, Inc.* v. *Superior Court*, *supra*, 17 Cal.3d at p. 496.) Finally, a forum selection clause will not be enforced if to do so will bring about a result contrary to the public policy of the forum. (*Cal-State Business Products & Services, Inc.* v. *Ricoh*, *supra*, 12 Cal.App.4th at p. 1680.)

OP, the party opposing the enforcement of the forum selection clause, bears the burden of proof. (12 Cal.App.4th at p. 1680; *Smith, Valentino & Smith, Inc.* v. *Superior Court*, *supra*, 17 Cal.3d at p. 496.) ▉ "In contrast with the abuse-of-discretion standard of review applicable in a noncontractual forum non conveniens motion, a substantial-evidence standard of review applies where a forum has been selected by contract." (*Cal-State Business Products & Services, Inc.* v. *Ricoh*, *supra*, 12 Cal.App.4th at p. 1680; but see *Lu* v. *Dryclean-U.S.A. of California, Inc.*, *supra*, 11 Cal.App.4th at p. 1493; *Furda* v. *Superior Court*, *supra*, 161 Cal.App.3d at p. 424; *Smith, Valentino & Smith, Inc.* v. *Superior Court*, *supra*, 17 Cal.3d at pp. 493, 496.)[4]

---

[4]"[T]he substantial-evidence rule measures the quantum of proof adduced at a hearing and assesses whether the ultimate issues have been established by a 'solid, reasonable[,] and credible showing,' while the abuse-of-discretion standard measures whether the act of the lower tribunal is within the range of options available under governing legal criteria in light of the evidence before the tribunal. [Citation.] While none of the contractual forum non conveniens cases have explicitly stated the standard of review, it is apparent from their discussion that they are de facto applying the substantial-evidence test, and there is a meaningful basis for distinction. In ruling on a forum non conveniens motion where no contract is involved, the lower tribunal decides whether or not to exercise jurisdiction based on the evidence before it in light of legally prescribed criteria. Some criteria may be present, some may not; ultimately, the review does not depend upon the sufficiency of the evidence before the lower tribunal but whether it correctly applied the pertinent criteria. On the other hand, in a contractual forum non conveniens motion, the trial court must determine if there is

## The Trial Court Properly Enforced the Forum Selection Clause Within the Agreement

■ We review OP's various arguments and conclude the trial court properly enforced the challenged provision, finding it reasonable and unambiguous. Although there appears to be subtle differences in the law regarding forfeitures in license agreements between the respective forums, no California statutory provision prohibits OP from waiving California law.

The record amply supports the reasonableness of this choice-of-forum provision in which OP agreed claims arising under the license agreement shall, at NHLPA's election, be filed in Ontario, Canada. OP's officers, Sobil and Siegel, are sophisticated, experienced businessmen, and Sobil is trained in the law. There is no evidence they did not freely and voluntarily agree to the challenged provision. Indeed, even if OP could not negotiate to alter this provision of the proffered license agreement, it is of no import so long as OP signed the contract freely and voluntarily, having "the power to walk away from negotiations if displeased with the provision." (*Cal-State Business Products & Services, Inc.* v. *Ricoh, supra,* 12 Cal.App.4th at p. 1681.) Additionally, the provision is completely consistent with the reasonable expectations of OP given that NHLPA is an Ontario, Canada domiciliary, OP inferentially recognizing this was part of the price of doing business with NHLPA. (*Ibid.*) Presumably, "a party which has contracted away its right to choose its home forum (as well as all the concomitant conveniences of a home forum) has . . . done so because the value it receives from the negotiated deal is worth the chance the party may be required to litigate disputes elsewhere." (*Id.* at p. 1683.)

The choice of forum provision is rationally related to the licensing agreement and designed to protect NHLPA, which conducts business internationally, from being confronted by a myriad of different state, provincial and national forums. By selecting Ontario as the forum, NHLPA endeavors to obtain a uniform interpretation of the terms of its license agreement. The reasonableness of this provision is thus furthered by the rational relationship it has to the parties' business relationship.

■ The trial court found there appears to be a conflict between the applicable law of Ontario and California pertaining to forfeitures within

---

sufficient evidence to satisfy the requirements for invalidating a binding contract. If the trial court finds there are facts present which satisfy these criteria, it *must* act in a particular way; there is no discretion involved. The reviewing court is thus involved in determining the quantum of evidence adduced, not the manner in which factors were applied. [Citation.]" (*Cal-State Business Products & Services, Inc.* v. *Ricoh, supra,* 12 Cal.App.4th at pp. 1680-1681; see *Lifeco Services Corp.* v. *Superior Court* (1990) 222 Cal.App.3d 331, 334 [271 Cal.Rptr. 385].)

license agreements, but concluded it does not amount to a conflict with a fundamental policy of California. The court held: "There is no public policy reason to deny enforcement of a forum selection clause freely entered into. There is no applicable statutory scheme prohibiting the parties from choosing a non-California forum."

Granted, California through its antiforfeiture statute (Civ. Code, § 3275)[5] and case precedent treat forfeiture provisions with disfavor, strictly and reasonably construing them to avoid forfeiture, preferring reasonable compensation to forfeiture and resisting enforcement brought upon by a minor default. (See *Baypoint Mortgage Corp.* v. *Crest Premium Real Estate etc. Trust* (1985) 168 Cal.App.3d 818, 829 [214 Cal.Rptr. 531]; *Hawley* v. *Orange County Flood etc. Dist.* (1963) 211 Cal.App.2d 708, 713 [27 Cal.Rptr. 478]; *Straus* v. *North Hollywood Hosp., Inc.* (1957) 150 Cal.App.2d 306, 311 [309 P.2d 541]; *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 771 [128 P.2d 665].) However, Civil Code section 3275 expressly provides forfeiture provisions will be enforced where the breach of a contractual obligation is the result of gross negligence, or willful or fraudulent conduct. Similarly, Ontario law generally permits equitable relief from forfeiture where it would be unconscionable not to do so to avoid unjustly enriching the nondefaulting party. (*Bordo* v. *403512 Ontario, Inc.* (1983) 41 O.R.2d 68, 77-78; see 5 Canadian Encyclopedia Dig.Ontario (3d ed. 1990) § 560, pp. 415-416.) Statutorily, the Ontario courts are authorized to grant relief against penalties and forfeiture and, in doing so, to impose such conditions as to compensation or otherwise that justice warrants. (Ontario Courts of Justice Act, §§ 98, 111 (R.S.O. 1990, ch. 43); see also Law of Property Act, 1925, 15 Geo. V, ch. 20, § 146 [English law]; *Dominelli Service Stations* v. *Petro-Canada, Inc.* (1992) Ont. Lexis 199, 200 [construing § 20(1) of Landlord and Tenant Act].) However, unlike California where no reported decision has specifically addressed whether relief from forfeiture is available in license agreements, the English House of Lords dismissed an appeal, after a court of appeal had done so, in *Sport International Bussum B.V.* v. *Inter-Footwear Ltd.* (1984) 1 W.L.R. 776, 794, holding the equitable doctrine of relief against forfeiture does not include mere contractual licenses especially where trademarks are concerned and the defaulting party freely entered into the agreement. (See 5 Canadian Encyclopedia Dig.-Ontario, *supra*, § 560 at pp. 415-416, fn. 42.)

---

[5]Civil Code section 3275 provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of [its] failure to comply with its provisions, [the party] may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

This potential difference in the law of the two competing forums pertaining to forfeitures in license agreements does not amount to a conflict involving fundamental policy in California. There is no public policy reason to deny enforcement of this forum selection clause which the parties have freely entered into. Here, given the absence of any statute prohibiting the parties from choosing Ontario as a forum and therefore waiving California law, there exist "no compelling policy reasons for denying enforcement of the forum selection clause . . . ." (*Furda* v. *Superior Court, supra,* 161 Cal.App.3d at p. 427, fn. omitted.)

This case is unlike *Hall* v. *Superior Court* (1983) 150 Cal.App.3d 411 [197 Cal.Rptr. 757], where the court refused to enforce a forum selection clause. In *Hall,* a contract for the sale of securities contained a forum selection and choice of law provision in favor of Nevada. All parties were California residents and the corporate defendant had its principal place of business in California. Although the contract was executed at the Las Vegas airport, the transaction took place in California. The court of appeal found there was an offer to sell or buy securities in California, subjecting the transaction to California Securities law. The court held: "[T]he right of a buyer of securities in California to have California law and its concomitant nuances apply to any future dispute arising out of the transaction is a 'provision' within the meaning of [California Corporations Code] section 25701 which cannot be waived or evaded by stipulation of the parties to a securities transaction. Consequently, we hold the choice of Nevada law provision in this agreement violates section 25701 and the public policy of this state [citation] and for that reason deny enforcement of the forum selection clause as unreasonable." (*Id.* at p. 418.) Here, as in *Furda,* there is no applicable statutory scheme prohibiting the parties from choosing a non-California forum and waiving California law. This is not to suggest California has no public policy against forfeiture. Rather, California law does not prohibit parties to a contract to voluntarily and freely agree to another forum and the law governing there. Indeed, given the availability of the Ontario forum which has a strong interest in this licensing relationship, California's public policy is not violated by enforcing the forum selection clause in this case.[6]

---

[6]Although we acknowledge there are potential differences between the laws of forfeiture in the two forums and their application, these differences within the context of the alleged breaches giving rise to NHLPA's election to terminate the license agreement may not be great and thus not amount to an affront to California fundamental policy of avoiding forfeiture. Civil Code section 3275 will not come to the aid of a breaching party to a contract where that party's breach was the result of gross negligence, willful conduct or fraud. OP bears the burden of proving its conduct was neither willful nor grossly negligent in order to obtain

Regarding the reasonableness of this forum selection clause which contains a choice-of-law provision, the record is devoid of any evidence the Ontario forum agreed to by the parties is either unavailable to OP or unable to accomplish substantial justice in resolving this dispute. We agree with NHLPA that despite any differences between the law of these two forums, there is no serious contention Canadian jurisprudence cannot provide these litigants with substantial justice.

■ Finally, contrary to OP's assertion, the forum selection clause is not ambiguous. The provision clearly and expressly states: "[A]ny claims arising hereunder shall, at the Licensor's election, be prosecuted in the appropriate court of Ontario." Emphasizing the language within a forum selection clause must be clear and unambiguous in designating a forum as exclusive and mandatory (citing *Hunt Wesson Foods, Inc.* v. *Supreme Oil Co.* (9th Cir. 1987) 817 F.2d 75, 77), OP asserts the provision here is ambiguous because although it might allow NHLPA to elect to prosecute its own actions in Ontario, it does not unequivocally mandate OP prosecute its claims against NHLPA exclusively in Ontario. To the contrary, the forum provision refers to "any claims arising hereunder," without restriction as to who may be asserting the claim. Moreover, its mandatory character is reflected by the use of the word "shall," requiring prosecution of any claims in Ontario upon NHLPA's invoking the clause. OP's reliance on federal case precedent (e.g., *Hunt Wesson Foods, Inc.* v. *Supreme Oil Co.*, *supra*, 817 F.2d at pp. 77-78; and *Utah Pizza Service, Inc.* v. *Heigel* (D.Utah 1992) 784 F.Supp. 835) is misplaced, because they involve permissive clauses establishing jurisdiction and not mandatory forum selection provisions. Here, the forum selection provision expressly requires claims arising under the license agreement be prosecuted in Ontario, at NHLPA's election. The trial court correctly noted the difference between *Hunt Wesson Foods, Inc.* and a case there distinguished, *Full-Sight Contact Lens* v. *Soft Lenses, Inc.* (S.D.N.Y. 1978) 466 F.Supp. 71, where the court enforced a clause providing that any dispute would be brought in either San Diego County or Los Angeles County. Although that case involved an election between either county, that election did not render the forum provision permissive. The forum selection clause here is not ambiguous.

---

relief under Civil Code section 3275 and reinstatement of the contract. (*Bartley* v. *Karas* (1983) 150 Cal.App.3d 336, 342 [197 Cal.Rptr. 749], disapproved on other grounds in *Petersen* v. *Hartell* (1985) 40 Cal.3d 102, 117 [219 Cal.Rptr. 170, 707 P.2d 232].) If NHLPA's allegations here are established that OP ignored express contractual conditions precedent to advertising and merchandising within weeks of the onset of the licensing relationship, California law will not insulate OP from forfeiture.

## DISPOSITION

The order is affirmed.

Nares, J., and Haller, J., concurred.