**SBKC SERVICE CORP., Plaintiff,**

v.

**1111 PROSPECT PARTNERS, L.P. et al., Defendant.**

Civil Action No. 95–2540–JWL.

United States District Court, D. Kansas.

May 28, 1997.

John L. Peterson, Williamson & Cubbison, Kansas City, MO, Elizabeth Drill Nay, Lewis, Rice & Fingersh, L.C., Kansas City, MO,

Louis A. Cohn, Porter A. Cohn, Porter & Cohn, L.L.C., Kansas City, MO, for Plaintiff.

Michael J. Armstrong, Speer, Austin, Holliday & Zimmerman, Olathe, KS, Terrence L. Bingman, Luce, Forward, Hamilton & Scripps, San Diego, CA, Daniel M. Dibble, William C. Odle, Peter F. Daniel, Lathrop & Gage L.C., Kansas City, MO, for Defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction.

This matter comes before the court on the motion (Doc. # 38) of Defendants William Jeffery III and Kristin E. Jeffery ("Jefferys") to dismiss the plaintiff's claim based on lack of personal jurisdiction, the defendants' motion for summary judgment (Doc. # 36), and the plaintiff's motion for summary judgment (Doc. # 45). For the reasons discussed below, the Jefferys' motion to dismiss is granted, the plaintiff's motion for summary judgment is denied and the defendants' motion for summary judgment (Doc. # 36) is granted.

### II. Facts.[1]

On April 30, 1991, Mr. R. Michael Murphy, Mr. Daniel Reid, and Mr. Mark Harryman, as general partners, and Mr. William Jeffery III, as a limited partner, formed 1111 PROSPECT PARTNERS, L.P., a California Limited Partnership ("1111 LP") for the purpose of purchasing real property ("Property") located at 1111 Prospect Street, La Jolla, California. In May of 1991, 1111 LP sought financing from Security Bank of Kansas City ("Security Bank"), the plaintiff's parent corporation, to purchase the Property. As a condition to getting this loan, Security Bank required that 1111 LP provide an irrevocable letter of credit. On May 6, 1991, the First National Bank ("FNB"), a federal savings bank doing business in San Diego, issued a letter of credit for $1,669,309 ("LOC") on behalf of 1111 LP and in favor of Security

Bank. FNB required the Jefferys to execute a personal guaranty on the Letter of Credit. On May 7, 1991, Security Bank loaned 1111 LP $8,346,547. This loan was evidenced by a promissory note ("Note") and secured by a construction deed of trust and security agreement ("Deed of Trust") on the Property. The Note contains the following provision: "This is a Note payable in and according to the laws of the state of Kansas, and an action may be maintained in the state of Kansas and the county and venue of Wyandotte for the purpose of collecting any amounts payable hereunder or in any action for a deficiency." The Deed of Trust contains the following provision: "The Note shall be governed and construed according to the laws of the State of Kansas, and the District Court of Wyandotte County, Kansas, shall have jurisdiction over any action for a deficiency, provided that the laws of the State of California shall apply to the foreclosure of real estate."

In late 1992, 1111 LP defaulted on the Note. On November 16, 1992, Security Bank drew the entire amount of the LOC. After drawing on the LOC, Security Bank discussed extending the Note with 1111 LP. Security Bank informed 1111 LP that it would not extend the Note unless 1111 LP or someone on its behalf paid two months' interest on the Note. Shortly thereafter, Security Bank agreed with Mr. Murphy to extend the Note until February 28, 1993.[2] *See Pl.'s Mot. for Summ. J.,* Exhibit 13 ¶ 10. On December 17, 1992, Security Bank's Loan Committee met and approved the extension of the Note. *Id.* at Exhibit 1–H. The notes from this meeting clearly refer to Mr. Jeffery as a limited partner and make no reference to any reliance on the Jefferys' involvement in 1111 LP or the Jefferys' financial condition. *Id.* Shortly thereafter, the Jefferys paid one month's interest on the Note and borrowed $69,554.55 from Security Bank to pay a second month's interest on the Note.[3]

---

1. The following facts are uncontroverted except where noted.

2. The only contacts Mr. Steven Terbovich, Security Bank's loan officer involved in the extension of the Note, had with Mr. Jeffery did not concern

the extension of the Note. *Def.'s motion for Summ. J.,* Exhibit C at 42.

3. Security Bank's loan to the Jefferys was evidenced by a promissory note ("Jefferys' Note"), which provides that the payments are to be made

On or about December 31, 1992, an agreement was executed extending the Note.

In February of 1993, 1111 LP defaulted again and Security Bank began to foreclose on the Deed of Trust. On October 23, 1993, Security Bank foreclosed on the Deed of Trust and caused the Property to be sold at a trustee's sale, without judicial process. On October 26, 1993, the plaintiff purchased the Property at the foreclosure sale for $6,450,-000 and Security Bank transferred its interest in the Note and Deed of Trust to the plaintiff. After the foreclosure sale, a deficiency remained ("the Deficiency"). However, the parties do not agree on the amount of the Deficiency or whether it is collectible.

On October 5, 1993, FNB commenced a lawsuit ("1st Action") in San Diego County Superior Court seeking to recover from 1111 LP and the guarantors of the LOC (Mr. Murphy, Mrs. Kathryn Murphy, and the Jefferys) the amounts disbursed by FNB to Security Bank under the LOC, interest thereon, penalties, attorney fees, and costs. On October 29, 1993, the Jefferys and 1111 LP sued Security Bank ("2nd Action") in San Diego Superior Court alleging that Security Bank violated the security first principle of Cal.Civ.Pro. § 726(a) when it drew on the LOC prior to foreclosure. The Jefferys and 1111 LP prayed for an order declaring 1111 LP the rightful owner of the Property, quieting title to the Property in 1111 LP's name, and requiring the defendant to reconvey the Property's title to 1111 LP free and clear of all liens. They also filed a lis pendens ("1st Lis Pendens") on the Property giving all potential buyers constructive notice of their claim to title. On January 28, 1994, the Superior Court of California issued an order ("Expungement Order") expunging the 1st Lis Pendens on the Property and noted that, pursuant to Cal.Civ.Pro. § 405.36, the order was not effective until the proceeding commenced by the petition is finally adjudicated. 1111 LP and the Jefferys appealed the Expungement Order via a writ of mandamus. The California Court of Appeals declined to hear the writ and Security Bank recorded the Expungement Order on March 8, 1994,

and, through the plaintiff, sold the Property to Prospect Development, L.P. However, subsequent to the sale of the Property, the California Supreme Court granted review of the writ concerning the Expungement Order, which review is still pending.

On May 31, 1994, 1111 LP and the Jefferys filed another lawsuit ("3rd Action") in San Diego Superior Court alleging that Security Bank had wrongfully recorded the Expungement Order. 1111 LP and the Jefferys prayed for, among other things, an order declaring the 1st Lis Pendens still valid. The Jefferys also filed a second lis pendens ("Second Lis Pendens") on the Property.[4]

On August 15, 1994, the parties settled the 1st Action. The settlement agreement provided, among other things, that 1111 LP assigned its interest in the 2nd Action to the Jefferys and all of its other assets, including all 1111 LP's interest in the Property, to Mr. Jeffery.

The plaintiff filed this action in Wyandotte County District Court to collect the Deficiency. The defendants removed this action to federal court pursuant to 28 U.S.C. §§ 1441(a) and 1446.

### III. Jefferys' motion to dismiss.

#### A. Personal jurisdiction standard.

▬ In *Brown v. Mailman,* No. 95–2181, 1995 WL 716785 (D.Kan. Nov.13, 1995), this court recently summarized the applicable standard for a non-resident defendant's 12(b)(2) motion to dismiss based on an asserted lack of personal jurisdiction in this forum.

> In order to demonstrate personal jurisdiction sufficiently to defeat a motion to dismiss, a plaintiff need only make a prima facie showing that jurisdiction exists. The plaintiff's complaint and any affidavits submitted are to be construed, and any doubts are to be resolved, in the light most favorable to the plaintiff.

> In considering questions of personal jurisdiction, this court has adopted a two–step

---

at Security Bank's office located at 1 Security Plaza, Kansas City, Kansas.

4. The 2nd Lis Pendens was subsequently expunged.

analysis. First, the defendant's conduct must fall within the scope of the Kansas long–arm statute, K.S.A. § 60–308(b). The Kansas long–arm statute states that a non–resident defendant submits to the jurisdiction of the State of Kansas by, among other things, transacting business in Kansas or entering into a contract to be performed in whole or in part in Kansas. Second, the exercise of jurisdiction must be consistent with the requirements of due process. In Kansas, these inquiries are for all intents and purposes the same because the Kansas long–arm statute, K.S.A. 60–308(b), has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause.

*Brown,* 1995 WL 716785 at \*5 (citations omitted). The Tenth Circuit determines whether the exercise of jurisdiction is consistent with the requirements of due process by examining whether the non–resident defendant has sufficient minimum contacts with the forum. *See Rambo v. Am. S. Ins. Co.,* 839 F.2d 1415, 1419 (10th Cir.1988).

The minimum contacts standard may be met in two ways. First, a court may exercise *specific jurisdiction* if a defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. Second, a court may exercise *general jurisdiction* where the defendant's contacts, while not rising to the level of the traditional notion of presence in the forum state, are nonetheless continuous and systematic. Where general jurisdiction lies the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state.

*Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 455–56 (10th Cir.1996)(internal quotations and citations omitted)(emphasis added).

If the court determines the defendant has sufficient minimum contacts, the court must then determine whether the exercise of jurisdiction is reasonable under the circumstances of the case. *Rambo,* 839 F.2d at 1419.

The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2nd Cir.) (internal quotations and citations omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996).

### B. Analysis.

The Jefferys argue that they are not subject to personal jurisdiction in this forum for several reasons. First, the Jefferys contend that they are not subject to general jurisdiction in this forum because they have no relationship with Kansas. Second, the Jefferys contend that they are not subject to specific jurisdiction in this forum because they are not parties to the Note or Deed of Trust, which is the basis of this matter. Third, contrary to the plaintiff's contention, the Jefferys argue that Mr. Jeffery's conduct was not sufficient to transform his legal status from a limited partner with limited liability to a de facto general partner[5] and, therefore, he is not subject to the forum selection clauses in the Note and Deed of Trust. Fourth, even if he had become a de facto general partner of 1111 LP, Mr. Jeffery ar-

---

5. The parties, and hence the court, use the term "de facto general partner" to describe a limited partner who has lost his or her limited liability by engaging in conduct, with respect to the partnership, that is beyond the statutory boundaries of what a limited partner is permitted to do and still maintain his or her limited liability.

gues that he still would not be subject to personal jurisdiction in this forum because the acts of 1111 LP cannot subject its general partners to personal jurisdiction in a forum in which they would not independently be subject to personal jurisdiction. Fifth, even assuming Mr. Jeffery became a de facto general partner of 1111 LP and, therefore, was subject to 1111 LP's contracts, Mr. Jeffery is still not subject to personal jurisdiction in this forum because the plaintiff's evidence indicates that he did not become a de facto general partner until after the Note and Deed of Trust were executed.

In response, the plaintiff argues that the Jefferys are subject to personal jurisdiction in this forum for several reasons. First, the plaintiff contends that the Jefferys are subject to jurisdiction in this forum because they transacted business in Kansas and entered into a contract to be performed in Kansas when they borrowed $69,554.55 from Security Bank and used it, along with some personal funds, to pay two months interest on the Note in order to extend the Note and prevent foreclosure. Second, after Security Bank drew on the LOC, Mr. Jeffery became a general partner of 1111 LP based on his involvement in the negotiations surrounding the extension of the Note and 1111 LP's operation. Security Bank contends that it relied on Mr. Jeffery's involvement when it agreed to extend the Note. Third, when Mr. Jeffery became a de facto general partner of 1111 LP, he became jointly and severally liable for all of 1111 LP's contractual obligations, including the forum selection clauses in the Note and Deed of Trust, which act as a consent to personal jurisdiction in Kansas. In Reply, the Jefferys argue that the Jefferys' Note is insufficient to establish specific jurisdiction because the plaintiff's claim does not arise out of that transaction. They further argue that even if the plaintiff's claim did arise out of the Jefferys' Note, the obligation to pay money in Kansas, which is entered into telephonically or through the mails, is insufficient to establish the requisite minimum contacts to bring suit in Kansas to collect moneys owed pursuant to that obligation.

■■■ The plaintiff does not contend that general jurisdiction is applicable. Thus, the court must first address whether the Jefferys' Note and payment of two months interest to extend the Note in order to prevent foreclosure provides sufficient minimum contacts with this forum to warrant the exercise of specific personal jurisdiction over them in this matter. The inherent flaw in the plaintiff's argument is that although the Jefferys' forum related activities are tangentially related to the Note, the plaintiff's cause of action arises from 1111 LP defaulting on the Note, not from any conduct by the Jefferys. The plaintiff cites no persuasive authority to overcome this shortcoming in its theory.[6] Moreover, although neither the Supreme Court nor the Tenth Circuit have yet to clarify whether contacts that are related to the cause of action, but are not so closely related that the cause of action arises out of them, are a sufficient basis to exercise specific jurisdiction, most courts have utilized some sort of a causation test, varying from a proximate cause test (the narrowest) to a "but for" test (the broadest). *See* 16 *Moore's Federal Practice,* [§ 108.42(7)(b) ] (Matthew Bender 3d ed.1997); see also *Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 714–16 (1st Cir.1996)(discussing differences between proximate cause and "but for" tests), *cert. denied,* —— U.S. ——, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997). The "but for" test, which appears to have been applied in three prior District of Kansas decisions, requires a causal connection between the defendant's forum activities and the plaintiff's injuries in order to warrant the exercise of specific personal jurisdiction. *Id.* (citing *Source Associates Inc. v. Suncast Group,* 709 F.Supp.

---

6. The plaintiff cites *Rosedale State Bank & Trust Co. v. Stringer,* 2 Kan.App.2d 331, 334, 579 P.2d 158 (1978), for the proposition that because the Jefferys' Note clearly indicates that Security Bank is located in Kansas, the Jefferys are subject to personal jurisdiction in this forum. The *Rosedale* decision is clearly factually distinguishable from this case. In *Rosedale,* the lending bank was suing the Maker of a promissory note. In this case, the Jefferys are not the makers of the Note, which is the basis of this litigation. Thus, for purposes of specific jurisdiction, *Rosedale* does not provide legal support for the plaintiff's assertion that the Jefferys are subject to suit in this forum based on the Note of which they are not the makers.

1023, 1025 (D.Kan.1989); *US Sprint Communications Co. v. Boran,* 716 F.Supp. 505, 510 (D.Kan.1988); *Grimandi v. Beech Aircraft Corp.,* 512 F.Supp. 764, 767 (D.Kan.1981)). The plaintiff has offered no evidence or theory demonstrating how its alleged injuries are "but for" causally connected to the Jefferys' forum activities.[7] As a result, the court concludes that after construing the facts in a light most favorable to the plaintiff, the plaintiff's argument in favor of asserting personal jurisdiction over the Jefferys based on their forum related conduct fails.

■ The plaintiff's remaining arguments are based on Mr. Jeffery becoming a de facto general partner of 1111 LP. Even assuming Mr. Jeffery became a de facto general partner of 1111 LP shortly before Security Bank agreed to extend the Note, the court believes that this argument fails also. Although the Tenth Circuit has not addressed the issue of whether jurisdiction over a partnership establishes jurisdiction over the individual partners, the Ninth Circuit, in *Sher v. Johnson,* 911 F.2d 1357 (9th Cir.1990), has addressed this issue based on facts similar to this case. *Id.* at 1365. The *Sher* court relied on *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980)[8], for the proposition that the requirements of *International Shoe* must be met as to each defendant. *Id.* The *Sher* court opined,

> Liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum. *See Shaffer v. Heitner,* 433 U.S. 186, 204 & n. 19, 97 S.Ct. 2569, 2579 & n. 19 , 53 L.Ed.2d 683 (1977). Regardless of their joint liability, jurisdic-

tion over each defendant must be established individually.

*Id.* at 1365. The *Sher* court further stated, [W]hile each partner is generally an agent of the partnership for the purpose of its business, he is not ordinarily an agent of his partners. Thus, a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily may not be imputed to the other partners. In this case, the district court has jurisdiction over only those individual partners who personally established the requisite minimum contacts with California.

*Id.* at 1366. Based on the *Sher* court's well reasoned analysis and the court's conclusion above that Mr. Jeffery does not have sufficient independent minimum contacts with this forum to support specific jurisdiction, the court concludes that the plaintiff's argument that non–resident general partners are subject to personal jurisdiction in any forum where the partnership is subject to personal jurisdiction is without merit. *Sher,* 911 F.2d at 1365–66.

■ The plaintiff's final basis for personal jurisdiction in this forum is the Note and Deed of Trust's forum selection clauses. The plaintiff argues that pursuant to those clauses, Mr. Jeffery, as a de facto general partner of 1111 LP, consented to personal jurisdiction in this forum. Again, even assuming Mr. Jeffery became a de facto general partner of 1111 LP shortly before Security Bank agreed to extend the Note, the court is not persuaded by this argument.

Under the plaintiff's theory, Mr. Jeffery became a de facto general partner of 1111 LP sometime after the Note and Deed of Trust were executed. However, neither fo-

---

**7.** For example, the plaintiff could have satisfied its "but for" burden by producing evidence indicating that if the Jefferys had not borrowed and paid two months' interest on the Note to Security Bank, the Note would not have been extended, the foreclosure would have occurred sooner, and no deficiency would have resulted. No such evidence has been proffered.

**8.** In *Rush,* Savchuk sued Rush in Minnesota for an automobile accident that occurred in Indiana. Rush had no ties to Minnesota, but Rush's insurance carrier, State Farm, who was obligated to

indemnify Rush for any liability from the accident, had sufficient jurisdictional contacts in Minnesota. The Minnesota Supreme Court aggregated the contacts of the defending parties and thereby found sufficient contacts to establish jurisdiction over Rush. The United States Supreme Court reversed, holding that the fact that State Farm and Rush were both potentially liable did not allow the imputation of jurisdictional contacts from one to the other. *Rush,* 444 U.S. at 328–33, 100 S.Ct. at 577–80.

rum selection clause specifically states that the general partners of 1111 LP individually consent to personal jurisdiction in this forum. Thus, there is no evidence that Mr. Jeffery or 1111 LP's general partners voluntarily consented to personal jurisdiction in this forum as required by both Kansas and California law. *Vanier v. Ponsoldt*, 251 Kan. 88, 101, 833 P.2d 949 (1992); *CQL Original Products, Inc. v. Nat'l Hockey League Players' Ass'n*, 39 Cal.App.4th 1347, 46 Cal. Rptr.2d 412, 415 (1995). As a result, the plaintiff appears to be arguing that a partnership's consent to personal jurisdiction equates to the individual general partner's consent. The court has found no authority to support such a proposition. As a result, the court concludes that it would not be fair and reasonable to enforce the forum selection clauses against Mr. Jeffery because there is no evidence that he ever voluntarily consented to be personally subject to personal jurisdiction in this forum concerning issues involving the Note. *Id.*

 Even assuming that a general partner is personally bound by his or her partnership's consent to personal jurisdiction, the plaintiff fails to explain how an incoming general partner can be personally bound by a forum selection clause entered into prior to him becoming a general partner. It is undisputed that if he did become a de facto general partner of 1111 LP, Mr. Jeffery did not do so until after 1111 LP agreed to the forum selection clauses. Thus, based on Kansas and California partnership law, Mr. Jeffery is not personally bound by 1111 LP's prior obligations, which include the forum selection clauses contained in the Note and the Deed of Trust, beyond his partnership contribution. K.S.A § 56–317 ("A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before the person's admission as though he or she had been a partner when such obligations were incurred, except that this liability shall be satisfied only out of partnership property."); Cal.Corp.Code § 15017 (same). Moreover, Kansas and California law also provide that a limited partner only becomes liable as a general partner when the limited partner, among other things, transacts business with a third party who reasonably believes, based on the limited partner's conduct, that the limited partner is a general partner. K.S.A. § 56–1a203(a); Cal. Corp.Code § 15632(a). Because the plaintiff has produced no evidence to indicate that it reasonably believed, based on Mr. Jeffery's conduct, that Mr. Jeffery was a general partner prior to the execution of the Note and the Deed of Trust, this argument also fails. *Id.*

Thus, based on the court's above analysis, the court concludes that the Jefferys are not subject to personal jurisdiction in this forum. As a result, the court grants the Jefferys' motion to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(2).

## IV. Motions for summary judgment.

Because the court has granted the Jefferys' motion to dismiss, the court need only address those issues in the parties' summary judgment motions which involve 1111 LP, the only remaining defendant in this matter. Those issues are whether the plaintiff's cause of action should be dismissed because it should have been filed as a compulsory counter claim in the 2nd or 3rd Actions and whether the plaintiff is entitled to a deficiency judgment against 1111 LP, and if so, in what amount. The court will address these remaining issues together.

### A. Summary judgment Standard.

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non–moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.Pro. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non–movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

### B. Counter claim.

■ The defendants argue that pursuant to Cal.Civ.Pro.Code § 426.30(a) [9], the plaintiff's deficiency claim, which is the basis of the litigation pending before this court, is legally barred because it is a related cause of action and, therefore, the plaintiff was required to assert it as a counter claim in the 2nd or 3rd Actions. The defendants do not dispute the fact that the plaintiff was not a party to the 2nd Action and, therefore, its deficiency claim cannot be barred under the defendant's counter claim theory as it applies to the 2nd Action. Cal.Civ.Pro.Code § 426.30; Fed.R.Civ.Pro. 13(a). Thus, the plaintiff's argument is based on demonstrating that the 3rd Action is sufficiently related to the plaintiff's deficiency claim to have required the plaintiff to bring it as a compulsory counter claim in the 3rd Action.

■ Cal.Civ.Pro.Code § 426.10 defines a "related cause of action" as ". . . a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." The main purpose behind § 426.10 is to avoid multiplicity of actions. *See Cheiker v. Prudential Ins. Co. of Am.,* 820 F.2d 334, 337 (9th Cir. 1987).

In this case, it is undisputed that the only issue to which the plaintiff was required to file an answer in the 3rd Action was whether the defendants are entitled to the attorney fees incurred as a result of Security Bank's purportedly premature recording of the Expungement Order. The defendants fail to offer any credible argument demonstrating that the basis of the 3rd Action, Security Bank's alleged wrongful recordation of the Expungement Order, arises out of the same transaction, occurrence, or series of transactions or occurrences as the plaintiff's deficiency cause of action. In fact, whether Security Bank prematurely recorded the Expungement Order has no legal or factual relationship to whether the plaintiff is entitled a deficiency judgment in this case. *See Church of Scientology of Cal. v. Wollersheim,* 42 Cal.App.4th 628, 651, 49 Cal. Rptr.2d 620 (1996)(holding that a suit arising out of the litigation process itself is not "related," as defined by § 426.10, to the transaction or occurrence which is the subject of the plaintiff's complaint), *rev. denied,* (May 22, 1996). As a result, the court concludes that the plaintiff's deficiency claim is not barred based on the fact that the plaintiff failed to bring it as a counter claim in the 3rd Action. Cal.Civ.Pro.Code § 426.30; Cal. Civ.Pro.Code § 426.10.[10]

9. Cal.Civ.Pro.Code § 426.30(a) states,

Except as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

10. The defendants cite *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), for the proposition that the court should dismiss this case in favor of the litigation currently pending in California state court. The *Wilton* decision, however, is factually distinguishable from this case. In *Wilton,* a federal district court stayed a declaratory judgment action in favor of a pending state lawsuit, which encompassed the issues raised in the declaratory judgment action, in order to avoid piecemeal litigation and to prevent the petitioner insurance company from forum shopping. *Id.* at 278–80, 115 S.Ct. at 2139. In this case, there is no pending state lawsuit which encompasses the issues raised in the plaintiff's deficiency claim. As a result, the court rejects this argument.

## C. Deficiency.

■ It is uncontroverted that the plaintiff exercised its rights under California law to utilize a non–judicial foreclosure. The key issue presented is what law controls whether a deficiency is available after a non–judicial foreclosure. The plaintiff argues that Kansas law governs, while the defendants argue that California law governs. Both parties base their conclusions on the same clauses contained in the Note and the Deed of Trust. Specifically, those clauses state the following:

This is a Note payable in and according to the laws of the state of Kansas, and an action may be maintained in the state of Kansas and the county and venue of Wyandotte for the purpose of collecting any amounts payable hereunder or in any action for a deficiency.

*Pl.'s Mot. for Summ. J.*, Exhibit 1–A at 4.

The Note shall be governed and construed according to the laws of the State of Kansas, and the District Court of Wyandotte County, Kansas, shall have jurisdiction over any action for a deficiency, provided that the laws of the State of California shall apply to the foreclosure of real estate.

*Pl.'s Mot. for Summ. J.*, Exhibit 1–C ¶ 11.12.

California law clearly prohibits the recovery of a deficiency if the creditor utilizes a non–judicial foreclosure method. Cal.Civ. Pro.Code § 580d.[11] As a result, if California law applies, the plaintiff is precluded from recovering a deficiency. Unlike California, however, there is no statutory or common law basis in Kansas permitting a non–judicial foreclosure. Thus, if the court were to conclude that Kansas law applied, the court would be faced with an interesting enigma: how would Kansas law treat a deficiency after a non–judicial foreclosure if Kansas law permitted non–judicial foreclosures.

The court concludes that California law applies. Cal.Civ.Pro.Code § 580d is entitled "Foreclosure under power of sale; no deficiency judgment; exceptions." Based on the clear reference to foreclosure in the statute's title, it is apparent that § 580d is part of California's real estate foreclosure law by which the parties agreed to be bound, and the plaintiff offers no persuasive argument to the contrary. Furthermore, the existence of a purported waiver of California's anti–deficiency laws contained in the agreement to extend the Note is an indication that the parties believed that § 580d was applicable under the choice of law clauses contained in the Note and Deed of Trust. Thus, the court concludes that ¶ 11.12 of the Deed of Trust requires the application of § 580d as part of California's real estate foreclosure law and, if there were nothing further, the plaintiff would be precluded from recovering a deficiency in this matter.

■ In fact, there is yet one further consideration. As previously mentioned, when the parties agreed to extend the Note, the extension agreement included a waiver of California's anti–deficiency laws. The waiver specifically provides, in pertinent part,

Each of the parties or individuals executing this Extension waives the benefit of any "antideficiency legislation" which might otherwise bar any recovery against any of them because of Bank's election of remedies, including but not limited to an exercise of power of sale under any deed of trust, mortgage or other security agreement. Each hereby expressly waives any and all benefits under ... California Code of Civil Procedure Sections 580b, 580d, and 726.

*Pl.'s Mot. for Summ. J.*, Exhibit 1–F ¶ 5. Thus, the court must determine whether such a waiver is permitted.

The defendants cite *Freedland v. Greco,* 45 Cal.2d 462, 465–66, 289 P.2d 463 (1955), and *Commonwealth Mortgage Assurance, Co. v. Superior Court,* 211 Cal.App.3d 508, 517, 259 Cal.Rptr. 425 (1989), for the proposition that the protections of § 580d cannot be waived in advance by the debtor. The plaintiff does not refute this proposition. Therefore, because § 580d prevents the plaintiff from recovering a deficiency and because California

---

11. Cal.Civ.Pro.Code § 580d provides in pertinent part,

No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property ... in any case in which the real property ... has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

law prevents an advance waiver of § 580d's protection, the court concludes that the plaintiff is not entitled to a deficiency. As a result, the court denies the plaintiff's motion for summary judgment and grants the defendants' motion for summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that the Jefferys' motion to dismiss (Doc. # 38) is granted.

**IT IS FURTHER ORDER** that the plaintiff's motion for summary judgment (Doc. # 45) is denied and the defendants' motion for summary judgment (Doc. # 36) is granted. As a result, the court orders the plaintiff's complaint be dismissed.

**IT IS SO ORDERED.**